**Mike Seymour MOUNT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–05–00842–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 15, 2007.

Anthony Osso, Houston, for appellant.

Jessica Akins McDonald, Houston, for appellee.

Panel consists of Justices ANDERSON, EDELMAN, and FROST.

## SUBSTITUTE MAJORITY OPINION

KEM THOMPSON FROST, Justice.

We withdraw our opinion of August 8, 2006, and we issue this opinion in its place.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On Saint Patrick's Day 2005, Houston Police Officer Kenneth Dagnault received a police dispatch regarding a possible vehicle theft near 5177 Richmond, involving a white Cadillac pickup truck. A few minutes later, Officer Dagnault saw what he described as "a tan or goldish colored or silver, light colored Cadillac pickup truck" being driven about a half of a block from that location. He followed the vehicle and initiated a "felony stop." The driver of the Cadillac truck, later identified as appellant, pulled the vehicle into a parking lot and stopped. Officer Dagnault, with back-up officers, approached the vehicle with guns drawn. The officers accompanying Officer Dagnault opened the doors of the vehicle and asked that appellant and his companion exit the vehicle. Both men were patted down for weapons, while Officer Dagnault checked appellant's driver's license and the registration of the vehicle. Further investigation revealed that the vehicle was registered to appellant's wife and, in fact, was not stolen. However, during this investigation, Officer Dagnault detected a strong odor of alcohol on appellant and noticed that appellant's eyes were red, glassy, and bloodshot. Thus, although the investigation eliminated appellant as a suspect in the unauthorized use of the motor vehicle he was driving, as a result of the stop, appellant fell under suspicion for driving while intoxicated ("DWI").

Officer Dagnault called a DWI unit to come to the scene and test appellant for alcohol intoxication. Officer Stacy Pierce, assigned to the DWI task force, arrived shortly thereafter and attempted to conduct several field sobriety tests, most of which appellant refused to perform. Appellant also refused to consent to a breath test for alcohol and refused to sign a written acknowledgment that he had received his DWI warnings. Appellant admitted that he had consumed approximately two beers. Officer Pierce concluded that appellant had lost the normal use of mental and physical faculties and placed appellant under arrest.

Appellant was charged by information with a misdemeanor DWI offense. At trial, the jury found appellant guilty and assessed punishment at three days' confinement in the Harris County Jail and a $400 fine.

## II. ISSUES PRESENTED

Appellant asserts the following issues on appeal:

(1)-(2) The trial court abused its discretion in denying appellant's (1) request to strike venire member number three, for cause and (2) request for a hearing to further examine this venire member's ability to be fair and impartial.

(3)-(4) The trial court abused its discretion in denying appellant's motion to

suppress the fruits of an allegedly unlawful arrest and detention in which he allegedly was seized and searched without a warrant or probable cause.

### III. ANALYSIS

**A. Did the trial court abuse its discretion in denying appellant's request to strike venire member number three for cause?**

In two issues, appellant challenges the trial court's denial of his (1) request to strike venire member number three, Charlotte Ann Denton, for cause and (2) request for a hearing to further examine Denton's ability to be fair and impartial. During voir dire, Denton explained that she was a death claims analyst. When asked whether her line of work would affect her ability to be fair, the following exchange occurred:

> Defense Counsel: Does it involve DWI accidents?
>
> Venireperson No. 3: I'm a death claims analyst. I pay death claims.
>
> Defense Counsel: DWI's?
>
> Venireperson No. 3: Well, if someone dies, yes, I would.
>
> Defense Counsel: Would that experience affect your ability in this case to—
>
> Venireperson No. 3: Probably not as long as there wasn't a child involved. Because I have two children, I tend to—
>
> Defense Counsel: "Probably not" does not work. I've got to have a definitive. I always tell people to err on the side of caution. If you are not sure, I always tell them to err on the side of caution. So we'll call you up individually.

Later, when the parties were making their peremptory strikes, appellant's counsel objected as follows:

> Defense Counsel: Judge, I'm going to ask that No. 3 be challenged for cause. She was the one who it—I asked her about her job and she does death claims and she said it would probably affect her. I told her that we would bring her up only because of the time element involved.
>
> The Court: That's denied.
>
> Defense Counsel: Can I bring her up, Judge?
>
> The Court: That's denied.
>
> . . .
>
> Defense Counsel: Just for clarification on the record, my understanding when we started, you were going to allow us to bring them up if we had any questions of them. So that's why I left—I just wanted to be clear on it, I was running out of time and I told her to think about it and we would bring her up, we would have to answer yes or no. I told her "probably" wouldn't be sufficient and I was going to move on it.
>
> The Court: What I said was if you think it is going to screw up the whole panel, then you can bring them. Also, the question she was toying with was the death of a child. We don't have that.
>
> Defense Counsel: She doesn't know that.
>
> The Court: Okay.
>
> Defense Counsel: Judge, for the record, I'm going to request an extra peremptory challenge, I'm having to use one of my peremptory challenges on No. 3, juror No. 3, Charlotte Denton. And, by doing so, I'm having to take another juror that I would use a strike on. At this time I'm requesting a challenge and once

I submit my strikes and the State submits their strikes, then I would identify the juror that I'm having to take, Your Honor, that I don't have a strike to use on.

**The Court:** All right, sir. That will be denied.

**Defense Counsel:** Judge, I used—I would use the strike that I'm using on Ms. Denton, No. 3, I would use that strike—or, if the Court granted me an extra strike, I would use it on No. 20, Your Honor. He noted to be victim of a DWI.

**The Court:** All right, sir.

**Defense Counsel:** Therefore I wouldn't want him as a juror in this case.

**The Court:** All right.[1]

We cannot conclude, as appellant suggests, that the answers Denton gave demonstrate that she would be unfair or biased in this case. Denton never said she could not be fair to appellant; she merely indicated that her judgment might be impacted in a DWI accident case involving a child. This case, however, does not involve a DWI accident or injury or death to any person.

▇▇▇ Bias is an inclination toward one side of an issue rather than to the other. *See Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 750–51 (Tex.2006). Disqualification of a venire member extends to bias or prejudice against the subject matter of the suit as well as against the litigants. *Id.* To disqualify a potential juror for bias as a matter of law, the record must show conclusively that the potential juror's state of mind led to the natural inference that she would not act with impartiality. *Id.* A venire member's indication that she cannot be fair and impartial, because her feelings are so strong in favor of a party that she will base her verdict on those feelings and not on the evidence, supports a successful challenge for cause. *Id.*

▇▇▇ If a prospective juror's bias or prejudice for or against a party in a lawsuit is established as a matter of law, the trial court must disqualify that person from service. TEX. GOV'T CODE ANN. § 62.105(4) (Vernon Supp.2005); *Malone v. Foster*, 977 S.W.2d 562, 564 (Tex.1998). If bias or prejudice is not established as a matter of law, whether the potential juror is sufficiently biased or prejudiced to merit disqualification is a factual determination the trial court must make using its discretion. *Malone*, 977 S.W.2d at 564. We do not reverse on appeal in the absence of an abuse of discretion. *See Cortez ex rel. Estate of Puentes v. HCCI–San Antonio, Inc.*, 159 S.W.3d 87, 95 (Tex.2005). Deference to the trial court is especially critical when an appellate court is reviewing a record that demonstrates uncertainty in a venire member's responses. Because the trial court is in the best position to evaluate the prospective juror's sincerity and ability to be fair and impartial, the appellate court gives great deference to the trial court. *Goode v. Shoukfeh*, 943 S.W.2d 441, 453 (Tex.1997).

The record does not conclusively show that Denton's feelings were so strong in favor of a party that she would base her verdict on those feelings and not on the evidence. Although Denton stated that she dealt with death claims (that sometimes resulted from DWI accidents), she affirmatively stated that it probably would not affect her unless there was a child involved. Moreover, the trial court was in a better position to evaluate Denton's voir dire responses than this court, and the

---

1. We note that after this exchange, the clerk of the court called the venire members, including venire member No. 20, John Bynum, to be seated.

trial court specifically stated, in regard to Denton, that "the question she was toying with was the death of a child. We don't have that." The trial court was keenly aware of Denton's answers and concluded that she could be impartial in this case. We find no abuse of discretion. *See Hafi v. Baker,* 164 S.W.3d 383, 385 (Tex.2005) (concluding that a juror who worked as defense attorney in medical malpractice actions was not biased as a matter of law in medical malpractice action although he suggested that, because of his career as a defense attorney, he could relate to the defendants' perspective); *Cortez,* 159 S.W.3d at 93 (holding that disqualification of venire member for cause was not required, though during voir dire venire member said that, as an insurance adjuster, he had a better understanding of defendant nursing home owner's side of the case); *Kiefer v. Continental Airlines, Inc.,* 10 S.W.3d 34, 39 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (holding that potential juror who stated she would give benefit of doubt to airline was not biased as matter of law). Accordingly, we overrule appellant's first issue.

■■■ Turning to appellant's second contention, that the trial court erred in failing to grant his request to further examine Denton regarding her alleged bias, we again consider whether the trial court abused its discretion in making this ruling.[2] *See Smith v. State,* 703 S.W.2d 641, 643 (Tex.Crim.App.1985) (concluding that the standard by which to review restrictions on voir dire questioning is an abuse of discretion). A defendant enjoys the right to question a panel of potential jurors freely, but the trial court's discretion extends to imposing reasonable restrictions on the amount of time allotted for such questioning. *Boyd v. State,* 811 S.W.2d 105, 115 (Tex.Crim.App.1991). Although Denton was employed as a death claims analyst and her job occasionally included handling death claims resulting from DWI accidents, when asked if her line of work would affect her judgment, she replied, "Probably not, *as long as there was not a child involved.*"[3] Appellant requested that Denton be brought up to the bench for further examination. The trial court denied this request but explained its ruling, noting that appellant's case did not involve the death of a child. If the prospective juror states her position clearly, and without reservation, the trial court does not err in refusing to permit further questioning. *See White v. State,* 629 S.W.2d 701, 706 (Tex.Crim.App.1981). The trial court did not abuse its discretion in denying appellant's request for further examination of Denton's alleged bias. *See Phillips v. State,* 701 S.W.2d 875, 889 (Tex. Crim.App.1985) (concluding that when prospective juror clearly stated that she would hold the State to a higher burden of proof beyond all doubt, the trial court did not err in allowing further questioning), *overruled on other grounds by Hernandez v. State,* 757 S.W.2d 744, 752 (Tex.Crim. App.1988); *see also Abron v. State,* 523 S.W.2d 405, 408 (Tex.Crim.App.1975) (concluding that trial court can set reasonable time limits and restrict repetitious or vexatious questions, restrict questions asked in improper form, restrict questions directed at personal habits of jurors); *Ford v. State,* 14 S.W.3d 382, 390 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (stating that "[a] trial judge may limit a defendant's voir dire under specific circumstances;

2. Appellant has not provided this court with any authority in support of his position that he was entitled to a hearing to further question Denton.

3. Emphasis added.

that is, where a question commits a venire member to a specific set of facts[,] ... *where the venire member has already stated his position clearly and unequivocally,* and where the questions are not in proper form" (emphasis added)). We overrule appellant's second issue.

## B. Did the trial court abuse its discretion in denying appellant's motion to suppress?

In issues three and four, appellant contends the trial court erred in denying his motion to suppress. Specifically, in issue three, he alleges that the trial court should have suppressed evidence of the DWI offense because the initial detention was unlawful. In issue four, he contends the motion to suppress should have been granted because the initial detention was actually an illegal arrest, and, for this reason, the trial court erred in denying his motion.

We review the trial court's ruling on a motion to suppress under an abuse-of-discretion standard. *Long v. State,* 823 S.W.2d 259, 277 (Tex.Crim.App.1991). If supported by the record, a trial court's ruling on a motion to suppress will not be overturned. *Brooks v. State,* 76 S.W.3d 426, 430 (Tex.App.-Houston [14th Dist.] 2002, no pet.). At a suppression hearing, the trial court is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented. *Id.* We give almost total deference to the trial court's determination of historical facts that depend on credibility and demeanor, but review de novo the trial court's application of the law to the facts if resolution of those ultimate questions does not turn on the evaluation of credibility and demeanor. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

### 1. Investigative detention or arrest?

Interactions between police and civilians are divided into three categories: (1) encounters, (2) investigative detentions, and (3) arrests. *See State v. Larue,* 28 S.W.3d 549, 553 n. 8 (Tex.Crim. App.2000). "A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant." TEX.CODE CRIM. PROC. ANN. art. 15.22 (Vernon 2005). However, this "restraint of liberty" standard is not adequate when distinguishing between an arrest and a detention because it is a characteristic common to both. *Dang v. State,* 99 S.W.3d 172, 180 (Tex.App.-Houston [14th Dist.] 2003), *rev'd on other grounds,* 154 S.W.3d 616 (Tex.Crim.App.2005); *Green v. State,* No. 14–03–00213–CR, 2004 WL 1381021, at *4 (Tex.App.-Houston [14th Dist.] Jun. 22, 2004, pet. ref'd) (not designated for publication). Whether a person is under arrest or subject to a temporary investigative detention is a matter of degree and depends upon the length of the detention, the amount of force employed, and whether the officer actually conducts an investigation. *See Woods v. State,* 970 S.W.2d 770, 775 (Tex.App.-Austin 1998, pet. ref'd). Likewise, whether a detention is an actual arrest or an investigative detention depends on the reasonableness of the intrusion under all of the facts. *See Rhodes v. State,* 945 S.W.2d 115, 118 (Tex. Crim.App.1997).

Appellant contends that actions the officer took at the time he was stopped transformed the traffic stop into an unlawful arrest. During an investigative detention, an officer may employ the force reasonably necessary to effect the goal of the detention: investigation, maintenance of the status quo, or officer safety. *Id.* at 117. However, if the force utilized

exceeds that reasonably necessary to effect the goal of the stop, this force may transform an investigative detention into a full-blown arrest. *See State v. Moore*, 25 S.W.3d 383, 385–86 (Tex.App.-Austin 2000, no pet.). Reasonableness must be judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight. *Rhodes*, 945 S.W.2d at 118. Allowances must be made for the fact that officers must often make quick decisions under tense, uncertain, and rapidly changing circumstances. *Id.* Additional factors to consider in determining the reasonableness of the detention include the nature of the crime under investigation, the degree of suspicion, the location of the stop, the time of day, and the reaction of the suspect. *Moore*, 25 S.W.3d at 386. The officer's opinion, while not determinative, is another factor to be considered. *Amores v. State*, 816 S.W.2d 407, 413 (Tex.Crim.App.1991). Also very important is whether the officers actually conducted an investigation after seizing the suspect. *Moore*, 25 S.W.3d at 386.

At the suppression hearing, Officer Dagnault testified that, around midnight on Saint Patrick's Day 2005, he received a call from dispatch about a possible auto theft in progress around the 5100 block of Richmond, involving a white Cadillac pickup truck driven by an unknown male. At the time he received the call, Officer Dagnault was located north of Richmond on Sage, about three-quarters to a mile away from the location at which the possible auto theft was in progress. Approximately two minutes later, Officer Dagnault arrived near the suspect area and observed a "tan or goldish colored or silver, light colored Cadillac pickup truck." Officer Dagnault advised dispatch that he had located the Cadillac pickup truck and was waiting for back-up before he initiated a felony traffic stop. Officer Dagnault further testified that he waited for another unit because of

the safety concerns involved with a stolen vehicle. Officer Dagnault testified that, in conducting a felony stop of a suspected stolen vehicle, the procedure is to approach the vehicle as if a highly dangerous person is behind the wheel. Officer Dagnault and two other officers approached appellant's vehicle with guns drawn and gave appellant and his passenger oral commands to put their hands out the windows to ensure there were no unseen persons in the vehicle. The officers then opened the doors to the vehicle, escorted appellant and his passenger out, and told them to place their hands on the vehicle while the officers conducted a pat-down. Officer Dagnault testified that during a felony stop, he typically puts his weapon away as soon as he feels "safe," meaning that the situation is in his control. Officer Dagnault testified that, during this particular stop, the guns were put away after a minute or less, as soon as appellant's hands were on the car.

At this time, Officer Dagnault and the officers conducted a thorough investigation, including checking the vehicle's registration. At the hearing, Officer Dagnault described this investigation:

Q: [The State]: And what happened after they got out of the car?

A: [Dagnault]: We go through, we actually, you know, pat them down, make sure there's no weapons or anything like that. Get their Ids, run the registration, verify—basically just investigate the scene, find out what's going on, who is what, you know, make sure if it is a stolen vehicle, of course, registration may not match or it won't match. The ignition may be popped or something like that.

Q: [The State]: And what investigation did you do in this case?

A: [Dagnault]: At that point in time we pulled them out of the vehicle. We pat them down, pull their wallet out, took his ID, one officer stands there and watches, the other checks the ID to the registration. I believe it was registered to his wife. It wasn't him. Actually, it was registered to a business and under his wife.

Q: [The State]: And at that point, when you find out that the car is registered to Defendant's wife, what do you do?

A: [Dagnault]: Well, it depends. In the current situation, we got them out the vehicle, we detected a strong odor of alcoholic beverage and had very glassy eyes, red eyes. So the investigation kind of—once we verified the vehicle was theirs, wasn't stolen, the investigation went into a different direction.

Officer Dagnault testified that upon detection of the alcohol on appellant, he advised appellant that he was going to investigate him for driving while intoxicated. The officers waited for the DWI task officer to arrive. Appellant was never placed in handcuffs or put in the back of the patrol car.

Appellant, testifying at the suppression hearing, stated that the officers blocked his vehicle and asked him to throw his keys out the car window and exit the vehicle. Appellant testified that the officers forced him at gunpoint to place his hands on his vehicle while they searched him for weapons. Appellant stated that he did not believe he was free to go, and he thought that he was being placed under arrest at this time. Appellant points to these facts in arguing that the traffic stop was an illegal arrest. In support of this argument, he relies on two cases, *Amores,* 816 S.W.2d at 407, and *Colston v. State,* 511

S.W.2d 10 (Tex.Crim.App.1974). These cases are factually distinguishable.

In *Amores,* a police officer responded to a "burglary in progress" call from an apartment complex indicating a black male was loading a box into a car. *Amores,* 816 S.W.2d at 410. The officer arrived at the scene within one minute of the call and observed Amores, a black male, sitting in a parked car. *Id.* As the officer entered the apartment-complex parking lot, Amores began to drive away. *Id.* The officer blocked Amores's vehicle with his police car, drew his gun and pointed it at Amores, ordered Amores out of his vehicle and made him lay on the ground with his hands behind his back, and told Amores that he would shoot him if he did not follow directions. *Id.* at 411–12. The Court of Criminal Appeals held that "[t]hese facts are sufficient to demonstrate that appellant had been restricted or restrained in his liberty to such a degree as to constitute an arrest." *Id.* at 412. The court noted that although the detaining officer characterized Amores's stop as an investigative detention, he did not conduct any investigation. *Id.* Appellant argues that under *Amores,* by the time the officers observed the strong odor of alcohol on his breath and his glassy, red eyes, he already was restrained in his liberty to the extent that he was arrested. Thus, appellant argues, he was illegally arrested without probable cause and the evidence of his intoxication (testimony of the officers) should have been excluded as "fruit of the poisonous tree."

Appellant's reliance on *Amores* is misplaced. Unlike the situation in *Amores,* in this case there is testimony from the officer that supports the only reason that the guns were drawn—for safety concerns involved in felony stops of possible stolen vehicles. *See Gunnel v. State,* No. 14–04–00214–CR, 2005 WL 481355, at *6–7 (Tex.

App.-Houston [14th Dist.] Mar. 1, 2005, pet. dism'd) (distinguishing *Amores,* concluding that unlike *Amores,* the use of force with guns was reasonable in light of present safety concerns) (not designated for publication); *Morris v. State,* 50 S.W.3d 89, 97–99 (Tex.App.-Fort Worth 2001, no pet.) (distinguishing *Amores* and concluding that handcuffing the suspect was not an arrest based on the safety concerns of the officers). Moreover, unlike the situation in *Amores,* where no investigation was undertaken, the officers in this case conducted a thorough investigation upon detaining appellant. *See Gunnel,* 2005 WL 481355, at *7.

Appellant's reliance on *Colston v. State,* 511 S.W.2d at 12, is likewise misplaced for this reason. In *Colston,* although the Court of Criminal Appeals found that appellant was under arrest when he was told at gunpoint to place his hands on his vehicle, there was no evidence that the officers conducted an investigation. *Id.*

In addition, both *Amores* and *Colston* preceded the Court of Criminal Appeals's opinion in *Rhodes,* a case in which our high court rejected a "bright-line" test that mere handcuffing is always the equivalent of an arrest. *See Rhodes,* 945 S.W.2d at 118. The *Rhodes* court noted that "common sense and ordinary human intelligence must govern over rigid criteria" in evaluating the reasonableness of an investigative detention, explaining:

> Reasonableness must be judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight. Furthermore, allowances must be made for the fact that officers must often make quick decisions under tense, uncertain and rapidly changing circumstances.

*Id.* The *Rhodes* court indicated that, during an investigatory detention, (1) officers may use such force as is reasonably neces-

sary to protect the officers; (2) boxing in a suspect's car and drawing weapons does not automatically convert a detention into an arrest; and (3) in the interest of officer safety, it may be reasonable to surround a suspect's car and approach with drawn weapons during an investigatory detention. *Id.* at 117.

The trial court did not abuse its discretion in impliedly determining that, under the circumstances reflected by this record, the traffic stop amounted only to a temporary investigative detention. *See Rhodes,* 945 S.W.2d at 117–18 (holding that removing suspect from car, handcuffing him, and walking him back to the patrol car was reasonable to protect officer safety and did not constitute an arrest, based in part on officer's testimony regarding safety); *Spight v. State,* 76 S.W.3d 761, 769–70 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (concluding that because the officer felt a heightened concern for his personal safety, handcuffing the defendant did not amount to arrest and was reasonable as a temporary investigative detention); *Nargi v. State,* 895 S.W.2d 820, 822 (Tex.App.-Houston [14th Dist.] 1995) (holding that ordering a suspect to the ground does not necessarily convert an investigatory intention into an arrest), *pet. dism'd, improvidently granted,* 922 S.W.2d 180 (Tex.Crim. App.1996); *Green,* 2004 WL 1381021, at *4–5 (concluding that appellant was not under an arrest when the officer blocked his vehicle and approached appellant with his service revolver drawn).

**2. Was appellant's investigative detention valid?**

▮▮▮▮▮ Appellant also contends that there was no reasonable suspicion to make the initial stop of his vehicle. Therefore, we address whether Officer Dagnault, at the very least, had reasonable suspicion to stop appellant's vehicle. Reasonable sus-

picion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim.App.2005). This is an objective standard which requires the court to disregard any subjective intent of the officer making the stop and look solely to whether an objective basis for the stop exists. *Id.* A reasonable-suspicion determination is made by considering the totality of the circumstances. *Id.* at 492–93.

■ An investigatory detention or an arrest is not invalid merely because an officer relies upon reasonably trustworthy information that later proves to be erroneous. *Dancy v. State*, 728 S.W.2d 772, 783 (Tex.Crim.App.1987); *Brown v. State*, 986 S.W.2d 50, 51 (Tex.App.-Dallas 1999, no pet.) (concluding that although there was no evidence that the vehicle was actually stolen, the officers had probable cause for the warrantless arrest based on the stolen vehicle information on the "hot sheet," thus the contraband found as a result was admissible); *Kelly v. State*, 721 S.W.2d 586, 587 (Tex.App.-Houston [1st Dist.] 1986, no writ) (finding that stop of defendant because officer believed the vehicle was stolen provided the officer with reasonable suspicion to detain defendant regardless of whether the information was shown to be inaccurate or false).

■ When there has been some cooperation among police officers, the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists. *Hoag v. State*, 728 S.W.2d 375, 380 (Tex.Crim.App.1987). Moreover, the determination of reasonable suspicion is not limited to the facts solely within the detaining officer's knowledge. *See State v. Jennings*, 958 S.W.2d 930, 933 (Tex.App.-Amarillo 1997, no pet.). Reasonable suspicion can be based on information relayed to one officer by other officers and the sum of the information known to those officers cooperating with him. *See Fearance v. State*, 771 S.W.2d 486, 509 (Tex.Crim.App.1988).

■ Officer Dagnault had a reasonable suspicion to detain appellant based upon the circumstances and his knowledge and experience as a police officer. He stopped appellant in the vicinity of a reported possible vehicle theft. Although Officer Dagnault was not sure of the color of the vehicle, he testified that appellant was driving some kind of light-colored Cadillac pickup truck. Officer Dagnault had information that a white Cadillac pickup truck possibly had been stolen in the area. Officer Dagnault, after receiving the report over his radio, was justified in searching for and stopping a vehicle that was similar to the vehicle described by the caller. *See Mann v. State*, 525 S.W.2d 174, 176 (Tex. Crim.App.1975) (concluding that officers, upon receiving the anonymous call, were justified in initiating an investigation by proceeding to hunt for a car and occupants fitting the description given over the phone); *Mabry v. State*, 492 S.W.2d 951, 953 (Tex.Crim.App.1973) (concluding that police had probable cause to stop and arrest a suspect matching a broadcast about two black suspects in a green 1965 Chevrolet with Florida plates); *Vannatta v. State*, 773 S.W.2d 771, 773 (Tex.App.-Corpus Christi 1989, pet. ref'd) (concluding that an officer who received a radio dispatch about an unnamed person driving a blue and silver Bronco displaying the license plate ZY709 had reasonable suspicion to stop defendant, who was driving a silver and blue Chevy Silverdo pickup). The trial court did not abuse its discretion by impliedly determining that the circumstances,

taken together, gave Officer Dagnault reasonable suspicion to stop appellant's vehicle and conduct an investigative detention.[4]

Appellant relies on *Faulk v. State*, 574 S.W.2d 764 (Tex.Crim.App.1979) and *McMillan v. State*, 609 S.W.2d 784 (Tex.Crim.App.1981), to support his position that the officers did not have probable cause or reasonable suspicion to stop and detain him. Citing *Faulk*, appellant argues the initial detention is invalid because the dispatch was in regard to a *possible* auto theft. In *Faulk*, a young, black male wearing a multicolored shirt committed an armed robbery and then fled the scene on foot. 574 S.W.2d at 765. The Court of Criminal Appeals found that a police officer who stopped the defendant's car shortly after the armed robbery and removed him from the car at gunpoint, did not have reasonable suspicion or probable cause to stop the defendant on the basis of a description of the robber as a young, black male and furtive gestures made by the defendant as he was followed by the officer. *Id.* at 766. Thus, the court determined that the only fact connecting the suspect to the robbery was that he was a young, black male. *Id.*

Appellant's reliance on *Faulk* is misplaced. First, *Faulk* has been seriously undermined, if not expressly overruled, by the Court of Criminal Appeals's decision in *Woods v. State*, 956 S.W.2d 33 (Tex.Crim.App.1997) in which our high court abandoned the "as consistent with innocent activity as with criminal activity" approach to analyzing reasonable suspicion. *See Woods*, 956 S.W.2d at 38. Second, appellant's analysis of the reasonable-suspicion issue fails to take into account all of the facts known to Officer Dagnault and the brief time interval between the dispatch and the stop. Therefore, he does not consider the totality of the circumstances. At the time of the stop, Officer Dagnault knew that an auto theft was possibly in progress involving a white Cadillac pickup truck near the 5100 block of Richmond. Within minutes, Officer Dagnault saw a vehicle similar to that description near the location identified in the dispatch. Under the totality of the circumstances, the trial court did not abuse its discretion in determining that Officer Dagnault had reasonable suspicion to momentarily detain appellant and ask for his identification. *See White v. State*, 695 S.W.2d 799, 801 (Tex.App.-Amarillo 1985, no pet.) (concluding

---

**4.** *Compare Delk v. State*, 855 S.W.2d 700, 704–05 (Tex.Crim.App.1993) (concluding that fact that car parked outside building was listed on police computer as stolen provided police officers with reasonable suspicion of criminal activity sufficient to permit their investigatory stop of ordering residents from the building to answer questions); *Colston*, 511 S.W.2d at 12 (concluding that defendant was under arrest but that officers had the right to act upon the basis of the teletype dispatch and were entitled to assume that the officer requesting the arrest had sufficient probable cause to justify the arrest); *Louis v. State*, 825 S.W.2d 752, 754–55 (Tex.App.-Houston [14th Dist.] 1992, no pet.) (concluding that evidence supported trial court's finding that police officer's initial stop of a light tan Cadillac was legal when it was the only car on the street where a robbery had occurred and it was

reported that the robbery suspects were driving a white Oldsmobile; *and Clifton v. State*, 755 S.W.2d 556, 558 (Tex.App.-Fort Worth 1988, no writ) (stating that police officer had probable cause to stop and arrest defendant based on information by police dispatcher that vehicle believed to be stolen might be found at specific address from which police officer had observed defendant driving away); *with Young v. State*, 133 S.W.3d 839, 842 (Tex.App.-El Paso 2004, no pet.) (concluding that State failed to prove officers had requisite reasonable suspicion to stop defendant's car when officer did not testify that he suspected defendant had committed an offense, or otherwise establish why officers singled-out particular residence or area of surveillance, description of the car officers were asked to stop, or what the occupants of the car were suspected of doing).

that reasonable suspicion existed where three black males had committed robbery ten to fifteen minutes earlier and in close proximity to where officers saw two black males jogging down middle of road in early morning hours and began to run when they saw officers); *see also Gaines v. State,* 888 S.W.2d 504, 509 (Tex.App.-El Paso 1994, no pet.) (finding reasonable suspicion existed where officer saw two black males in a yellow Honda Civic on a certain road after receiving a radio broadcast that two black males had committed a burglary only minutes before, and had fled in a late model yellow Honda Civic and were last seen traveling south on the same road).

In *McMillan,* the Court of Criminal Appeals found that the initial stop of the defendant's vehicle was not justified. 609 S.W.2d at 786. In that case, the officer who initiated the stop testified that he "really had no idea if [McMillan's] vehicle was the same vehicle they had been chasing earlier that evening." *Id.* The officer testified that he "thought" that it was the same vehicle. *Id.* In *McMillan,* the officer that made the stop did not have more than a "hunch" or "suspicion." *Id.* The facts before us demonstrate that Officer Dagnault had more than a hunch when he stopped appellant's Cadillac pickup truck.

▆▆▆ Therefore, we conclude that Officer Dagnault had reasonable suspicion to stop appellant's vehicle to investigate whether it was stolen. Pursuant to this investigative detention, Officer Dagnault was entitled to question appellant regarding his identity and vehicle registration. *See Hoag,* 728 S.W.2d at 380 (observing that an officer may briefly stop a suspicious individual in order to determine his identity or maintain the status quo while obtaining more information). In addition, because a valid investigatory stop had been made, the officer was justified in conducting a limited search of the person

of the suspect, such as a frisk or pat down, for the protection of the officer while he conducted the investigation. *See Wood v. State,* 515 S.W.2d 300, 306 (Tex.Crim.App. 1974). During this brief and minimally intrusive detention, additional facts developed to support a continued detention of appellant. Although further investigation revealed that the vehicle appellant was driving was registered to appellant's wife, in the interim Officer Dagnault reasonably began to suspect that appellant had been driving while intoxicated. Thus, even though appellant was not arrested for unauthorized use of a vehicle, the investigation refocused on whether appellant had violated another law. Officer Pierce of the DWI task force concluded that appellant had been driving while under the influence of alcohol, which led to appellant's arrest. We overrule appellant's third and fourth issues.

## IV. CONCLUSION

▆▆▆ The trial court did not abuse its discretion in impliedly finding that (1) Officer Dagnault had reasonable suspicion to stop appellant's vehicle, (2) the investigative detention did not rise to the level of an arrest, and (3) during this valid detention, the officers acquired probable cause to arrest appellant after they detected a strong odor of alcohol on appellant's breath and noticed that appellant's eyes were red, glassy, and bloodshot. Therefore, we conclude that the trial court did not abuse its discretion in denying appellant's motion to suppress.

The trial court's judgment is affirmed.

EDELMAN, J., concurring.

RICHARD H. EDELMAN, Justice, concurring.

I would overrule appellant's third and fourth points of error on the ground that:

(1) the police officers had reasonable suspicion to make an investigatory stop of appellant's vehicle based on the radio dispatch; (2) the challenged evidence of his intoxication would have been readily apparent in the course of such a lawfully conducted investigative detention; (3) the evidence was therefore not obtained *as a result of* any conduct in making the stop that could have gone beyond an investigative detention and thereby amounted to an arrest; and, therefore, (4) the challenged evidence was either not within the scope of the exclusionary rule or was subject to the inevitable discovery exception to that rule.[1]

**1.** In response to this reference to the inevitable discovery rule, appellant's motion for rehearing en banc states that the federal constitutional law of inevitable discovery has no place in Texas search and seizure law, citing *State v. Daugherty,* 931 S.W.2d 268 (Tex.Crim. App.1996). However, this contention ignores the fact that appellant's challenge on appeal to the denial of his motion to suppress was based exclusively on the Fourth Amendment to the United States Constitution (without any mention whatever of the Texas Constitution). While a State is free to provide greater restrictions on police activity under its own state law than is imposed under federal law, it may not impose any greater restrictions as a matter of federal law. *Arkansas v. Sullivan,* 532 U.S. 769, 772, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001). Therefore, to the extent inevitable discovery has no place in Texas search and seizure law, Texas search and seizure law has no place in this appeal.