**Affirmed and Memorandum Opinion filed October 6, 2011.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-10-00753-CR

---

**BYRON THOMAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1250371**

---

## M E M O R A N D U M   O P I N I O N

Appellant was indicted for possessing between four and 200 grams of cocaine by aggregate weight, including any adulterants and dilutants. A jury convicted appellant as charged in the indictment, and the trial court assessed an enhanced sentence of 20 years' confinement. We affirm.

### BACKGROUND

Houston Police Department Officers Roy and Meola witnessed appellant driving a van out of an apartment complex known for narcotics activity on February 1, 2010. Officer Roy testified: "[Appellant] looked at us [as he passed us] like, you know, he gave

me a look . . . like he was kind of surprised." The officers followed appellant to "see what was happening," and when appellant saw that the officers had turned around to follow him, "he accelerated his speed." Appellant made a quick right turn at a red light without using a turn signal or coming to a complete stop. The officers attempted to catch up to appellant in response to these traffic violations, and appellant made several lane changes by "weaving in and out of traffic" without signaling. The officers activated their emergency lights, sirens, and spotlight as appellant made a left turn into a parking lot without using a signal. Officer Roy testified that appellant failed to immediately stop, but instead drove into an apartment complex connected to the parking lot, stuck his arm[1] out of the van window to drop "what appeared to be crack cocaine," and continued to drive another 30 to 40 yards before coming to a complete stop. Officer Meola testified that he could not see the van's driver's side window from his vantage point, and he did not see appellant or the other occupants drop anything out of the van windows.[2]

The officers observed a total of three individuals inside the van. Officer Roy approached the driver's side, and Officer Meola approached the passenger side. Officer Roy testified that appellant was "still kind of moving around inside the vehicle," and that Officer Roy was not sure what appellant was doing. Officer Meola testified that based on his experience, "if a car doesn't immediately pull over and we can see that there is movement in the vehicle, that more than likely they're either reaching for something, or trying to get rid of something, or looking for a spot to run."

Officer Roy ordered appellant out of the vehicle "at gunpoint" and patted appellant down to ensure that he was not carrying any weapons. Officer Meola ordered the other two passengers out of the vehicle and instructed them to stand in front of the van. Officer

---

[1] According to the trial transcript, Officer Roy also testified that appellant "stuck his *head*" out of the van window. Based on the context, the State's opening argument, and Officer Roy's testimony on redirect examination, it is possible that the word "hand" was inadvertently spoken or transcribed as "head."

[2] Officer Meola testified that Officer Roy told him, "G., he dropped something," and later remarked that the plastic bags recovered from Officer Roy's search of the area were "why [appellant] didn't stop." The trial court sustained appellant's hearsay objection to both of these statements and instructed the jury to disregard them.

2

Roy told Officer Meola "to watch [appellant] while he's secure." Officer Meola stood next to appellant but did not physically restrain appellant in any way.

Officer Roy then walked back to the location where he had observed appellant drop something outside the driver's side window. In that area, Officer Roy found two bags containing a substance in the form of "cookies," and he testified that crack cocaine dealers usually carry crack cocaine in such a form. Officer Roy showed the substance to Officer Meola, who testified that he was "pretty sure it was crack cocaine."[3] Officer Meola further testified that at that point, appellant was not under arrest, and the officers did not tell appellant that he was under arrest.

Officer Meola stated: "I asked [appellant] if he had just picked [the bags] up, or if he had them in his possession." When the State asked Officer Meola about appellant's response to this question, appellant objected on the grounds that his statements to Officer Meola do not "meet the requirements for a defendant's statement under the Code of Criminal Procedure."[4] The trial court overruled the objection and allowed Officer Meola to testify: "He told me he had just picked — he had just picked [the bags] up at an apartment complex . . . where we saw him leaving. . . . I asked him if he was trying to make a little extra change, and he says no. . . . [T]hat [the substance is] for his personal use."

The jury convicted appellant as charged in the indictment, and the trial court assessed an enhanced sentence of 20 years' confinement. Appellant argues in a single issue on appeal that the trial court erroneously overruled his objection to Officer Meola's testimony regarding appellant's statements.

## ANALYSIS

Appellant argues that he was in custody within the meaning of *Dowthitt v. State*, 931 S.W.2d 244, 254–55 (Tex. Crim. App. 1996), when he made incriminating

---

[3] Criminalist Carrie Adams testified that the substance later tested positive for cocaine and weighed 7.4 grams, including adulterants or dilutants.

[4] Appellant also made a hearsay objection, but does not re-urge that objection on appeal.

statements to Officer Meola, and that such statements should have been excluded because they were not obtained in compliance with article 38.22 of the Texas Code of Criminal Procedure and *Miranda v. Arizona*, 384 U.S. 436 (1966).

## I. Applicable Law and Standard of Review

The State may not use statements obtained through the custodial interrogation of an individual unless it demonstrates the use of procedural safeguards effective to secure the Fifth Amendment privilege against self-incrimination. *Miranda*, 384 U.S. at 444. Article 38.22 of the Code of Criminal Procedure precludes the use of statements that result from custodial interrogation without compliance with these and other procedural safeguards. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon 2005).

A custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Miranda*, 384 U.S. at 444. A person is in custody only if, under all the objective circumstances, a reasonable person would believe his freedom of movement was restrained to the degree associated with an arrest. *Dowthitt*, 931 S.W.2d at 254. If an investigation is not yet at a custodial stage, a person's Fifth Amendment rights have not yet come into play. *Melton v. State*, 790 S.W.2d 322, 326 (Tex. Crim. App. 1990).

There are at least four general situations when an investigative detention may evolve into custody:

1. The suspect is physically deprived of his freedom of action in any significant way;
2. A law enforcement officer tells the suspect that he cannot leave;
3. Law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and
4. Law enforcement officers have probable cause to arrest a suspect, manifest their knowledge of probable cause to the suspect, and do not tell the suspect that he is free to leave.

4

*Dowthitt*, 931 S.W.2d at 255. The defendant bears the burden at trial of proving that a statement was the product of a custodial interrogation. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). The "reasonable person" standard presupposes an innocent person, and the custody determination is based upon entirely objective circumstances. *Dowthitt*, 931 S.W.2d at 254–55.

A trial court's ultimate custody determination presents a "'mixed question of law and fact.'" *Herrera*, 241 S.W.3d at 526 (quoting *Thompson v. Keohane*, 516 U.S. 99, 112–13 (1995)). Therefore, we afford almost total deference to a trial court's custody determination when the questions of historical fact turn on credibility and demeanor. *Id.* at 526–27. Conversely, when the questions of historical fact do not turn on credibility and demeanor, we will review a trial court's custody determination *de novo*. *Id*. at 527. When the trial court denies a motion to suppress and does not enter findings of fact, the evidence is viewed "in the light most favorable to the trial court's ruling" and we "assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Id*. (internal quotations omitted).

With these standards in mind, we turn to the facts relevant to appellant's detention.

## II.    Appellant's Detention

Without citing any analogous authority, appellant argues that the officers' initial stop and subsequent investigative detention of appellant evolved into a custodial interrogation and that "at least three of the *Dowthitt* scenarios exist" in this case. Appellant presumably refers to the first, third, and fourth *Dowthitt* situations.[5]

### A.    Significant Deprivation of Freedom

In the first and third *Dowthitt* situations, an investigative detention can evolve into custody if officers physically deprive a person of significant freedom of movement, or create a situation in which a reasonable person would believe he is deprived of significant

---

[5] There is no evidence that law enforcement told appellant that he was not free to leave, which would implicate the second *Dowthitt* situation.

5

freedom of movement. *Dowthitt*, 931 S.W.2d at 255. To constitute custody in either of these situations, the restriction of a suspect's freedom of movement must amount to the degree associated with an arrest, as opposed to an investigative detention. *Id.* This is because both an investigatory detention and arrest involve a "restraint of liberty," but a non-custodial, investigative detention does not implicate a suspect's Fifth Amendment right against self-incrimination. *See Melton*, 790 S.W.2d at 326; *Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Whether a person is under arrest or subject to a temporary investigative detention is a matter of degree and depends upon (1) the length of the detention, (2) the amount of force employed, and (3) whether the officer actually conducts an investigation. *Mount*, 217 S.W.3d at 724 (citing *Woods v. State*, 970 S.W.2d 770, 775 (Tex. App.—Austin 1998, pet. ref'd)).

Appellant contends that his detention constitutes "custody" under the first and third *Dowthitt* situations because he was ordered out of his van "at gunpoint." The degree of force employed by a police officer is just one of several factors that must be considered to determine whether the investigative detention evolved into "custody." *See Campbell v. State*, 325 S.W.3d 223, 234 (Tex. App.—Fort Worth 2010, no pet.). Officers may use such force as is reasonably necessary under the circumstances to effect the goal of such a detention: investigation, maintenance of the status quo, or officer safety. *Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997). Whether such use of force elevates the detention to custody or an arrest turns on the reasonableness of the intrusion under all of the facts. *Bartlett v. State*, 249 S.W.3d 658, 669 (Tex. App.—Austin 2008, pet. ref'd).

The reasonableness of an officer's use of force during an investigative detention depends on factors such as the nature of the crime under investigation, the degree of suspicion, the location of the stop, the time of day, the reaction of the suspect, the officer's opinion, and whether the officer actually conducted an investigation after seizing the suspect. *Mount*, 217 S.W.3d at 725. "[A]llowances must be made for the fact

that officers must often make quick decisions under tense, uncertain and rapidly changing circumstances." *Rhodes*, 945 S.W.2d at 118. In some situations, an officer may reasonably draw a weapon, handcuff a suspect, or place a suspect in a patrol car to conduct an investigative detention; the use of such force does not necessarily transform the investigative detention into custody. *See, e.g.*, *Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002) (handcuffing and placing suspect in back of patrol car was reasonable during investigative detention in light of early-morning report of gunfire in the area, suspicious behavior by detainee, and fact that officer was alone with suspect); *Rhodes*, 945 S.W.2d at 117–18 (handcuffing was reasonable during investigative detention after high-speed chase in light of suspects' attempted flight, darkness, high-crime location, and fact that officer was left alone with one suspect while his partner chased the other); *Mount*, 217 S.W.3d at 725–27 (initial drawing of weapons on appellant for routine safety during felony stop of a suspected stolen vehicle before conducting temporary investigation was reasonable during investigative detention).

The officers testified that appellant committed numerous traffic violations after making eye contact with Officer Roy, failed to immediately stop when the officers activated their emergency equipment, dropped items out of the van window, and continued to move around in the stopped vehicle. Officer Meola testified that under these circumstances, appellant was likely "reaching for something, or trying to get rid of something, or looking for a spot to run." Appellant does not contend and we do not believe that under these circumstances, Officer Roy's drawing of a weapon was an unreasonable use of force employed to safely investigate the scene while preserving the status quo. *Compare Mount*, 217 S.W.3d at 725–27 (initial drawing of weapons on appellant for routine safety during felony stop of a suspected stolen vehicle was reasonable during investigative detention), *and Green v. State*, No. 14-03-00213-CR, 2004 WL 1381021, at *3–4 (Tex. App.—Houston [14th Dist.] June 22, 2004, pet. ref'd) (mem. op., not designated for publication) (blocking appellant's car and exiting patrol car with service revolver drawn on appellant, who was suspected of engaging in a drug

transaction and had attempted to reverse out of parking spot, was reasonable during investigative detention), *with Herrera v. State*, No. 13-05-102-CR, 2006 WL 3690729, at *4 (Tex. App.—Corpus Christi Dec. 14, 2006, pet. ref'd, untimely filed) (mem. op., not designated for publication) (restriction on appellant's freedom amounted to degree associated with arrest when four police vehicles were used to surround and block appellant's vehicle on all sides and five officers drew their weapons, pointed them directly at appellant, and ordered him out of the vehicle).

After drawing his weapon "during the initial stop," Officer Roy told Officer Meola to "watch" appellant and the other two passengers while Officer Roy searched the area for a "couple of minutes." Neither officer testified that appellant was physically restrained, handcuffed, or placed in the patrol vehicle. The law permits an officer a reasonable time to delay potential witnesses or suspects to determine the facts of a given situation. *See Parker v. State*, 710 S.W.2d 146, 147 (Tex. App.—Houston [14th Dist.] 1986, no pet.); *see also Achan v. State*, No. 14-07-00308-CR, 2008 WL 878934, at *4–5 (Tex. App.—Houston [14th Dist.] Apr. 3, 2008, pet. ref'd) (mem. op., not designated for publication) (officer's brief detention of appellant in driveway to investigate burglary complaint did not deprive appellant of freedom; officer did not handcuff or place appellant in the patrol car). Custody is not established during an investigative detention simply because the suspect is not able to leave until the investigation is completed. *See Parker*, 710 S.W.2d at 147.

Based on these facts, the officers' restriction of appellant's freedom was consistent with an investigative detention and did not rise to the degree associated with an arrest. *See Mount*, 217 S.W.3d at 724. The trial court could have properly concluded that appellant therefore was not in custody according to the first or third *Dowthitt* situations. *See Dowthitt*, 931 S.W.2d at 255.

### B. Probable Cause Manifested to the Suspect

Custody arises under the fourth *Dowthitt* situation when officers (1) have probable cause to arrest a suspect, (2) manifest their knowledge of probable cause to the suspect,

and (3) do not tell the suspect that he is free to leave. *Id.* Manifestation of probable cause can occur if information sustaining the probable cause is related by the officers to the suspect, or by the suspect to the officers. *Id.* However, this situation will not automatically establish custody; custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *Id.*

Assuming without deciding that Officer Meola had probable cause to arrest appellant for knowing possession of a controlled substance when he spoke to appellant, we do not agree that the manifestation of such probable cause occurred until appellant admitted to possessing the saleable substance for his "personal use." The officers had ordered appellant as well as the other two passengers out of the van, and all three individuals were being detained while Officer Roy searched the area. Officer Meola's questions to appellant, asking if appellant "had just picked [the bags] up, or if he had them in his possession" and "was trying to make a little extra change," were logically part of the officers' investigation and do not indicate that Officer Meola had probable cause to believe that appellant knowingly possessed the crack cocaine recovered by Officer Roy. In fact, these questions suggest that Officer Meola did not yet know whether appellant had knowingly possessed the crack cocaine prior to its recovery.

While courts have found the manifestation of probable cause to trigger custody in "certain unusual situations," those conditions are not present here. *See Stevenson*, 958 S.W.2d 824, 829 n.7 (Tex. Crim. App. 1997); *see also Dowthitt*, 931 S.W.2d at 255–57 (probable cause triggered custody after extremely long interrogation, during which police accompanied the suspect on restroom breaks and ignored his requests to see his wife). The trial court could properly have concluded that the officers' actions under these circumstances do not constitute a manifestation of probable cause, and that appellant was not in custody according to the fourth *Dowthitt* situation until after he made the challenged statements. *See Dowthitt*, 931 S.W.2d at 255.

9

## CONCLUSION

The trial court did not err in implicitly concluding, based on these objective circumstances, that a reasonable person in appellant's position would not think he was under arrest, and that his statements therefore were not the product of a custodial interrogation subject to the protections of *Miranda* and article 38.22. *See Dowthitt*, 931 S.W.2d at 255; *Melton*, 790 S.W.2d at 326. We therefore overrule appellant's only issue on appeal and affirm the judgment of the trial court.


/s/     Sharon McCally
           Justice


Panel consists of Justices Brown, Boyce, and McCally.

Do Not Publish — TEX. R. APP. P. 47.2(b).

10