Opinion filed February 4, 2021



In The

# Eleventh Court of Appeals

_____

## Nos. 11-19-00053-CR, 11-19-00054-CR, & 11-19-00055-CR

_____

## RICHARD DARNELL AMOS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 32nd District Court**
**Nolan County, Texas**
**Trial Court Cause Nos. 12365, 12366, & 12367**

### M E M O R A N D U M   O P I N I O N

The grand jury indicted Appellant, Richard Darnell Amos, on three first-degree felony charges of knowingly delivering a controlled substance, namely methamphetamine, in an amount of four grams or more but less than 200 grams. Appellant entered a guilty plea to all three indictments. The trial court subsequently found Appellant guilty of the offenses, assessed Appellant's punishment in each case at imprisonment for forty-four years in the Institutional Division of the Texas Department of Criminal Justice and a $500 fine, and ordered Appellant to pay court

costs and to reimburse Nolan County for attorney's fees. In a single issue, Appellant argues that the trial court committed reversible error in denying Appellant's motion to suppress the statements made by Appellant after his arrest. We affirm.

*Background Facts*

On March 31, 2017, Agent John H. Murphy of the Texas Department of Public Safety Criminal Investigations Division began an investigation into the distribution of methamphetamine by Appellant. Agent Murphy conducted an undercover investigation that included controlled purchases of narcotics from Appellant on six different occasions. Appellant was ultimately arrested and pleaded guilty to the first three controlled purchases, which were conducted on March 31, April 20, and May 11.

At the beginning of the investigation, Agent Murphy contacted an associate of Appellant's to purchase methamphetamine and was given Appellant's phone number. Agent Murphy called Appellant and set up a controlled purchase for seven grams of methamphetamine on March 31. The controlled purchase originally was to take place at Appellant's apartment, but Appellant directed Agent Murphy to meet in the restroom of an Allsup's Convenience Store in Sweetwater. Inside the restroom, Agent Murphy purchased approximately eight grams of methamphetamine from Appellant for $200. Agent Murphy recorded the exchange on a digital recorder with audio and video recording capabilities.

On April 20, Agent Murphy set up a second controlled purchase of methamphetamine from Appellant. This purchase took place at Appellant's apartment in Sweetwater. Agent Murphy entered the apartment where Appellant sold him 7.9 grams of methamphetamine for $200. This interaction was recorded in the same manner as the first.

On May 11, Agent Murphy conducted a third controlled purchase from Appellant where Appellant sold 7.7 grams of methamphetamine to Agent Murphy

2

for $180, again at Appellant's apartment. This transaction was also recorded in the same manner as the first two transactions. Agent Murphy also indicated his intent to purchase heroin from Appellant. Appellant stated that he did not have any but that he would put Agent Murphy in contact with someone who could sell him the heroin.

Appellant was subsequently arrested on October 31, 2017, at his apartment and transported to the Nolan County Jail. Appellant was taken to an interview room where Agent Murphy, Detective James Villanueva of the Nolan County Sheriff's Office, and Special Agent Jason Graham of the Texas Department of Public Safety questioned Appellant regarding his involvement in ongoing illegal drug trafficking.

Appellant admits that he was read his *Miranda*[1] rights. Appellant initialed next to the written *Miranda* warnings that he had verbally received. He checked "yes" that he understood each of those rights and then checked "yes" that he wished to waive each right. Appellant also signed a form indicating that he understood the rights as given and wished to continue speaking with law enforcement officers.

During the interrogation, officers stated that they were "on [his] side"; they were going to "throw [him] a lifeline"; "you've got to help yourself out"; he needed to "worry about [himself] and [his] kids"; the district attorney would give consideration to anyone who would help himself; they could not make any promises but the prosecutor would help him and officers would "go to bat for [him]"; and they would help get him out of jail. The officers also posed the question, "Why go to the pen when you can send a friend?"

Context is particularly important in a review of any discussion regarding Appellant's right to counsel in our examination of the "totality of the circumstances" surrounding a waiver of *Miranda* rights. After reading the *Miranda* warning

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

advising him of his right to an attorney and his right to have one appointed prior to questioning if he could not afford an attorney, Appellant stated that he had an attorney but had no money to pay him and asked: "So what do I do about that?" Detective Villanueva responded only, "That's fine, I'm just reading you—letting you—making you aware of your rights." No further discussion regarding an attorney or reference to legal counsel was made by Appellant.

Appellant filed a motion to suppress the statements he made during the custodial interview. The trial court denied the motion after a hearing, finding that, although the statements were made as a result of a custodial interrogation, Appellant knowingly and voluntarily waived his rights and that the officers did not induce the statements. Appellant then entered an open plea of guilty. The trial court heard evidence in a sentencing hearing and sentenced Appellant to forty-four years in prison on each of the three counts.

*Standard of Review*

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011); *Retana v. State*, No. 11-18-00044-CR, 2020 WL 976935, at *7 (Tex. App.—Eastland Feb. 28, 2020, pet. ref'd) (mem. op., not designated for publication). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Martinez*, 348 S.W.3d at 922–23; *Retana*, 2020 WL 976935, at *7. We afford almost total deference to the trial court's determination of historical facts and of mixed questions of law and fact that turn on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *Martinez*, 348 S.W.3d at 922–23; *Retana*, 2020 WL 976935, at *7. We review de novo the trial court's determination of pure questions of law and mixed questions of law and fact that do not depend on credibility determinations.

4

*Brodnex*, 485 S.W.3d at 436; *Martinez*, 348 S.W.3d at 923; *Retana*, 2020 WL 976935, at *7.

When, as in this case, the trial court makes explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We review a trial court's ruling on a motion to suppress in the light most favorable to the trial court's decision. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). At a suppression hearing, the trial court is the sole judge of the credibility of the witnesses and is free to believe or disbelieve any or all of the evidence presented. *See id.* at 24–25. "If supported by the record, a trial court's ruling on a motion to suppress will not be overturned." *Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

*Analysis*

A defendant's statement may be used in evidence against him if he made the statement freely and voluntarily and without compulsion or persuasion. TEX. CODE CRIM. PROC. ANN. art. 38.21 (West 2005). A defendant must knowingly, intelligently, and voluntarily waive his rights before a statement made while he was in custody may be used against him. *Id.* art. 38.22, § 3(a)(2). The determination of whether a statement is voluntary is based on an examination of the totality of the circumstances surrounding its acquisition. *Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995) (citing *Griffin v. State*, 765 S.W.2d 422, 429 (Tex. Crim. App. 1989)). There is no requirement that a defendant explicitly waive his rights. *Joseph v. State*, 309 S.W.3d 20, 24–25 (Tex. Crim. App. 2010). A waiver can be inferred from the actions and words of the defendant during the interview. *Id.*

At the outset, we note the State's concession that the October 31 interview was a "custodial [interrogation]." *See* CRIM. PROC. art. 38.22. Appellant contends that the trial court erred by failing to suppress statements he made during his

5

interrogation. Appellant asserts that the admission of the statements violated both federal law under *Miranda v. Arizona* and state law under Article 38.22 of the Texas Code of Criminal Procedure. *See Miranda*, 384 U.S. 436; CRIM. PROC. art. 38.22. Specifically, Appellant asserts (1) that the officers conducting the interrogation coerced him into incriminating himself and (2) that he did not give an informed waiver of his rights under *Miranda* and Article 38.22. Therefore, the key issue in our determination is whether Appellant knowingly and intelligently waived his *Miranda* rights and whether he was free from coercion in doing so.

Relying upon Articles 38.21 and 38.22 of the Texas Code of Criminal Procedure, Appellant claims that he did not knowingly, intelligently, and voluntarily waive his rights and that his will was "overborne." *See Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997). However, based on the record before us, we cannot agree because the totality of the circumstances surrounding Appellant's interrogation supports the trial court's determination that Appellant understood his rights and made a free and deliberate choice to waive his rights.

Appellant was lawfully arrested and transported to the Nolan County Jail. The video recording of the interview shows that Detective Villanueva advised Appellant of his rights and that Appellant indicated he understood these rights by writing his initials next to each *Miranda* right on the provided form. After indicating that he wished to waive his rights, Appellant spoke with the officers without hesitation.

Appellant additionally contends that the trial court erred by overlooking the officer's failure to substantively answer Appellant when he stated that he already had an attorney but asked what he should do about being unable to pay his attorney. It is true that law enforcement must halt a custodial interrogation if a suspect invokes his right to an attorney. *Davis v. United States*, 512 U.S. 452, 458 (1994); *Davis v. State*, 313 S.W.3d 317, 339 (Tex. Crim. App. 2010). A suspect invokes his right to an attorney when he or she unequivocally requests to speak to an attorney or to have

6

an attorney present at the interview. *Dinkins v. State*, 894 S.W.2d 330, 351 (Tex. Crim. App. 1995). Merely using the words "attorney" or "lawyer" is not sufficient because officers are not required to clarify a suspect's request. *Davis*, 512 U.S. at 461–62; *Dinkins*, 894 S.W.2d at 351. A person must "articulate his desire" so that "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 459. The test to determine whether a person invoked the right to counsel is an objective standard based on the totality of the circumstances, and those circumstances can contribute to the ambiguity of a request. *See Davis*, 313 S.W.3d at 339, 341.

In response to a portion of the *Miranda* rights read to Appellant at the outset of the interrogation, Appellant stated, "I have a lawyer, but I don't have money to pay him right now for the case, so what do I do about that?" Detective Villanueva replied that he was simply reading and making Appellant aware of his rights. There were no further statements or questions about a lawyer. At that time and in that context, there was no other statement that could fairly be construed as a misrepresentation of Appellant's right to counsel or as coercion to waive that right. Appellant then further implicated himself in the crimes with which he was charged.

Appellant's statement, "I have a lawyer, but I don't have money to pay him right now for the case, so what do I do about that?" was not an express statement requesting a lawyer but, rather, a question asked prior to indicating that he understood his right to have an attorney present and/or appointed. Appellant agreed to talk to law enforcement and continued to engage with the officers after asking this question. There was no further discussion or question regarding an attorney. Appellant's question does not constitute an express invocation of his right to an attorney, and Detective Villanueva was not required to clarify Appellant's statement. *See Davis*, 512 U.S. at 461–62. Furthermore, at no time did the officers present

7

during the interrogation indicate or expressly tell Appellant that he did not need or should not consult an attorney.

Appellant further contends that he was improperly induced into making incriminating statements against himself. Based on the record before us, we disagree. A statement is inadmissible if it was induced by a promise of some benefit to the defendant and the promise was positive, was made or sanctioned by someone in authority, and was of such an influential nature that it would cause a defendant to speak untruthfully. *Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004) (listing the requirements). Here, Appellant was specifically told by an investigating officer that the officers "could not make any promises." "[I]f the influence applied was such as to make the defendant believe his condition would be bettered by making a confession, true or false, then the confession should be excluded." *Fisher v. State*, 379 S.W.2d 900, 902 (Tex. Crim. App. 1964). However, that is not the case here.

The trial court specifically found that Appellant "knew what he was doing" when he "knowingly, intelligently, and voluntarily" waived his rights. At the hearing on the motion to suppress, the trial court received into evidence State's Exhibit S-1, which was a video recording of the October 31, 2017 custodial interview. This allowed the court the ability to weigh context, tone, volume, body language, and the totality of the circumstances under which Appellant waived his *Miranda* rights. The trial court found that no false or misleading statements were made by law enforcement to Appellant during the interrogation and that no promises were either indicated or made to Appellant at any time. Additionally, the trial court expressly found that law enforcement "did not psychologically intimidate" Appellant or overcome Appellant's will to resist "by coercion or trickery or anything similar." When the trial court makes explicit findings of fact such as these, we determine whether the evidence, when viewed in the light most favorable to the trial

court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We hold that the evidence supports the trial court's findings of fact.

Agent Murphy, having spoken with Appellant multiple times prior to the interview, testified that he believed that Appellant understood his rights and that there was no indication that Appellant did not know or understand what he was doing when he waived his rights and spoke with law enforcement on October 31, 2017. Agent Murphy explained that, prior to any statements made by Appellant, Detective Villanueva advised Appellant of his *Miranda* rights and asked him if he understood those rights. After each of those rights was read to Appellant, Detective Villanueva asked Appellant if he understood the rights read to him and asked Appellant to indicate his answer by writing his initials on the form in front of him. Appellant initialed every enumerated right and then checked "Yes" that he understood his rights.

Detective Villanueva then asked Appellant whether, after having read the rights, he wished to speak to the officers. Appellant indicated his answer by checking "Yes" on the form in front of him. At this point, the interview continued. During the interview, statements of fact were made to Appellant, but no statement made by any officer present during the interrogation induced Appellant to either admit a crime he did not commit or speak untruthfully.

Appellant conducted numerous drug transactions with Agent Murphy, which were recorded and later admitted into evidence. In light thereof, his statements made during the interrogation were truthful and were not coerced, untruthful admissions to crimes he did not commit. Additionally, none of the statements made by law enforcement constituted positive assertions backed by an official sanction or authorization amounting to an influence that would cause Appellant to speak untruthfully. Therefore, we agree with the trial court that no promises were made to

Appellant by law enforcement; that Appellant was not coerced; and that Appellant knowingly, intelligently, and voluntarily waived his rights.

Having reviewed the evidence in the light most favorable to the trial court's ruling, we cannot say that the trial court abused its discretion when it found that, based on the totality of the circumstances, Appellant understood his rights and voluntarily waived his rights. Therefore, the trial court did not err when it denied Appellant's motion to suppress. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgments of the trial court.


W. BRUCE WILLIAMS

JUSTICE


February 4, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

10