**Affirmed and Opinion filed March 7, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-01117-CR

---

**MARCUS DEWAYNE CHAMBERS, Appellant,**

**V.**

**THE STATE OF TEXAS, Appellee.**

---

**On Appeal from the 400th District Court
Fort Bend County
Trial Court Cause No. 10-DCR-055518A**

---

## O P I N I O N

A jury convicted appellant Marcus Dewayne Chambers of possession of cocaine and sentenced him to 28 years' imprisonment in the Texas Department of Criminal Justice, Institutional Division. Chambers appeals, arguing: (1) the evidence was legally insufficient to support the conviction, and (2) the trial court erred by denying his motion to suppress. We affirm.

# I

On September 11, 2010, Officers Francisco Javier Sanchez and Eric Sutton of the Houston Police Department were patrolling a high-crime area in southwest Houston. Driving past a nightclub called Tasso's, where they had previously made numerous arrests, they noticed a group of people loitering in the parking lot behind the club. Before that night, while making traffic stops in the vicinity, the officers had noticed people lingering in that area who routinely scattered upon seeing the patrol car. After one such incident, Sanchez and Sutton inspected the parking lot and found narcotics on the ground. Although the officers suspected the loiterers had dropped the narcotics, the high visibility of the patrol car had afforded the potential suspects plenty of time to flee. Because of those experiences, the officers decided to park their vehicle in a nearby field and continue their patrol on foot. Both officers were in uniform.

At about 2:00 a.m., Sanchez and Sutton walked by the front of Tasso's and saw no suspicious activity. They then walked along the side of the building toward the back parking lot, where several people were still lingering around a parked car. When Sutton was roughly fifteen yards away, one male in the group saw him approaching. Sutton saw the male drop a clear, plastic baggie as he turned to walk away. Suspecting the baggie contained narcotics, Sutton announced himself as a police officer and detained the male. As he did so, Sanchez saw Chambers, who was standing nearby, drop a beer can and quickly put both hands behind his back. Concerned that Chambers may be reaching for a weapon, Sanchez announced himself as a police officer, drew his gun, and pointed it at Chambers, instructing him not to move.

Sanchez walked behind Chambers and saw his hands inside the waistband of his shorts. He told Chambers to put his hands on top of the car, and Chambers

2

complied. Sanchez holstered his weapon and secured Chambers's hands behind his back with handcuffs before patting down the outside of Chambers's t-shirt and shorts, which were "halfway beneath his butt crack." Sanchez then pulled back the waistband of Chambers's shorts to determine whether he was concealing a knife or other sharp object in the fold of his waistband. Although Sanchez saw no weapons, he immediately noticed a clear, plastic baggie protruding several inches out of Chambers's buttocks. Sanchez told Chambers he saw the baggie and asked Sutton to come look at it. Chambers acknowledged that Sanchez had "got" him and said he knew he had "messed up." Although Sanchez could not see the contents of the baggie, its location coupled with Chambers's comment led him to suspect it contained narcotics.

By that time, Sutton had recovered the baggie that the first male dropped, which contained marijuana. Sutton then retrieved the officers' patrol car and drove it back to the parking lot. Sanchez asked Chambers to remove the baggie, explaining that Sanchez would do it if Chambers declined. Chambers removed the baggie, which contained a white, powdery substance that appeared to be cocaine. Sanchez secured it in a latex glove and arrested Chambers. Subsequent testing confirmed the white substance contained cocaine.

A grand jury indicted Chambers for possession of more than one gram but less than four grams of cocaine. After a pretrial hearing, the trial judge denied Chambers's motion to suppress. Following the trial on the merits, a jury convicted Chambers of the charged offense and, finding two enhancement paragraphs true, sentenced him to 28 years' imprisonment.

On appeal, Chambers argues: (1) the evidence was legally insufficient to support the conviction and (2) the trial court erred by denying his motion to suppress. We affirm.

## II

We begin with Chambers's second issue, in which he contends the trial court erred by denying his motion to suppress. Specifically, he argues the initial detention was an arrest rather than an investigatory detention and further that Sanchez did not have reasonable suspicion to make the initial detention.

We review the trial court's ruling on a motion to suppress under an abuse-of-discretion standard. *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005); *Thomas v. State*, 297 S.W.3d 458, 460 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). We afford almost total deference to the trial court's determination of historical facts but review the court's application of search-and-seizure law de novo. *Guzman v. State*, 955 S.W.2d 85, 87–88 (Tex. Crim. App. 1997); *Morrison v. State*, 132 S.W.3d 37, 42–43 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Here, the trial court did not make explicit findings of historical facts, so we review the evidence in the light most favorable to the ruling and assume the court made implicit findings of fact supported in the record. *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim. App. 2000).

## A

The United States Supreme Court has determined that there are three distinct types of interactions between police and citizens: (1) consensual encounters, (2) investigatory detentions, and (3) arrests. *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011) (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (consensual encounters); *Terry v. Ohio*, 392 U.S. 1, 30–31 (1968) (investigatory detentions); *Gerstein v. Pugh*, 420 U.S. 103, 111–12 (1975) (arrests)). "A person is arrested when he has been actually placed under restraint or taken into custody by an office or person executing a warrant of arrest, or by an officer or person arresting without a warrant." Tex. Code. Crim. Proc. art. 15.22; *Mount v. State*,

4

217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.). But this restraint-of-liberty standard is not adequate when distinguishing between and arrest and a detention because it is a characteristic common to both. *Mount*, 217 S.W.3d at 724. Rather, the distinction is a matter of degree depending on the length of the detention, the amount of force employed, and whether the officer actually conducted an investigation. *Id.*; *Woods v. State*, 970 S.W.2d 770, 775 (Tex. App.—Austin 1998, pet. ref'd). Additionally, the reasonableness of the intrusion under all of the facts is a relevant factor. *Mount*, 217 S.W.3d at 724; *see Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997).

Specifically, during an investigatory detention, "an officer may employ the force reasonably necessary to effect the goal of the detention: investigation, maintenance of the status quo, or officer safety." *Mount*, 217 S.W.3d at 724. But the use of force exceeding that which is reasonably necessary to achieve those goals may transform an investigatory detention into a full-blown arrest. *Id.* at 724–25. A court must determine reasonableness from the perspective of a reasonable officer at the scene, making allowances for the fact that officers must often make quick decisions under tense, uncertain, and rapidly changing circumstances. *Rhodes*, 945 S.W.2d at 118. Relevant factors in the reasonableness inquiry are the nature of the crime under investigation, the degree of suspicion, the location of the stop, the time of day, the reaction of the suspect, and whether the officer actually conducted an investigation after seizing the suspect. *Mount*, 217 S.W.3d at 725; *State v. Moore*, 25 S.W.3d 383, 385–86 (Tex. App.—Austin 2000, no pet.). Although the officer's opinion is also relevant, it is not determinative. *Amores v. State*, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991).

During the suppression hearing in this case, Sanchez testified that he saw Chambers quickly put his hands in the back of his shorts "as if he was stuffing

something in the back of his shirt or reaching for something in the back of his pants," which caused Sanchez to suspect Chambers had a weapon. Sanchez felt concerned for his safety as well as that of his partner, who was preoccupied detaining another suspect. Sanchez detained Chambers for the purposes of protecting himself and his fellow officer and investigating whether Chambers was, in fact, armed. In doing so, Sanchez announced himself as a police officer, drew his weapon, pointed it at Chambers, and told him not to move. Sanchez walked behind Chambers and instructed him to put his hands on top of the nearby vehicle. After Chambers complied, Sanchez holstered his weapon and secured Chambers's hands behind his back with handcuffs. Sanchez testified that Chambers was not under arrest at that time and that the purpose of the handcuffs was merely to secure Chambers's hands in case there were weapons concealed in his waistband. Sanchez then proceeded to conduct a "high[-]risk search" of Chambers, which involved patting down Chambers's outer clothing and checking his waistband. Sanchez testified that he was looking for a weapon, not for contraband or other evidence of criminal activity, and he had no reason to believe Chambers had narcotics on his person.

Further, although Sanchez used a weapon and handcuffs to detain Chambers, this amount of force was reasonable under the circumstances. Sanchez was on heightened alert while his partner was preoccupied with another suspect when he saw Chambers reach for what Sanchez suspected may have been a weapon. Further, this took place after 2:00 a.m. in a parking lot in a high-crime area where Sanchez had previously handled numerous incidents involving narcotics, weapons, and fighting, including one shooting. It was therefore reasonable for Sanchez to draw his weapon for safety's sake. Sanchez's decision to handcuff Chambers was also reasonable under these circumstances. Sanchez testified that he handcuffed

6

Chambers "in case, there was [sic] any weapons in his waistband . . . to make sure his hands were secure." The handcuffs were therefore used to ensure Sanchez's safety during his investigation, which is particularly reasonable given that Sutton was not available to assist him at the time. *See Rhodes*, 945 S.W.2d at 119 (Meyers, J., concurring and dissenting) ("[O]ur law does not require the finding of an arrest whenever an accused is handcuffed. Indeed, such a bright-line rule would hardly comport with recent Supreme Court case-law emphasizing the importance of police officer safety."); *cf. Moore*, 25 S.W.3d at 387 (concluding that handcuffing the suspect was not reasonably necessary to protect officer safety in a brightly lit store when a second officer was available to watch the suspect while another searched the suspect's backpack for weapons).

Therefore, we conclude that during the initial detention, Sanchez did not use more force than reasonably necessary to protect himself and those around him. He in fact conducted an investigation to determine whether Chambers was armed, and he testified that the initial detention was not an arrest. Further, considering the facts from the perspective of a reasonable officer at the scene acting under tense, uncertain, and rapidly changing circumstances, the amount of force used was reasonable.[1] *See Rhodes*, 945 S.W.2d at 118. Accordingly, the initial seizure was an investigatory detention rather than an arrest.

B

Having determined that the initial seizure was an investigatory detention

---

[1] It is well settled that Sanchez was entitled to pat down Chambers's outer clothing to feel for potential weapons. *See Terry*, 392 U.S. at 30–31. It is less clear, however, whether it was reasonable for Sanchez to pull back the waistband of Chambers's shorts even though he did not feel anything suspicious during the initial pat-down search. Although the use of force exceeding that which is reasonably necessary to achieve the goals of an investigatory detention may transform the seizure into an arrest, *see Mount*, 217 S.W.3d at 724, that is not to say the seizure was a full-blown arrest from the outset. And in this appeal, Chambers confines his objection to the initial detention.

rather than an arrest, we address Chambers's contention that Sanchez did not have reasonable suspicion to make the initial seizure.

To warrant an investigatory detention, an officer must have reasonable suspicion that the citizen is connected to criminal activity. *State v. Larue*, 28 S.W.3d 549, 553 n.8 (Tex. Crim. App. 2000). Additionally, if an officer reasonably suspects that a person is armed, a limited pat down of that person is permissible, even absent probable cause to arrest the person for a crime. *Terry*, 392 U.S. at 27; *Castleberry*, 332 S.W.3d at 467. This does not mean the officer must be absolutely certain that the person is armed; rather, the issue is whether a reasonably prudent officer in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Terry*, 392 U.S. at 27; *Morrison*, 132 S.W.3d at 45.

In this case, Sanchez reasonably suspected Chambers was armed based on seeing Chambers quickly put both of his hands into the back of his shorts. This is particularly true given that this occurred in the early morning and in a high-crime area. *See Castleberry*, 332 S.W.3d at 469 (concluding that a suspect reaching for his waistband "could be reasonably construed as reaching for a weapon" when the encounter took place behind a closed business in a high-crime area). Therefore, Sanchez had a reasonable suspicion that Chambers was armed, and the initial detention was lawful.[2]

In sum, we conclude that the initial seizure was an investigatory detention rather than an arrest and that Sanchez reasonably suspected Chambers was armed. Accordingly, we overrule Chambers's issue.

---

[2] We note that, on appeal, Chambers argues only that Sanchez lacked the requisite reasonable suspicion to make the initial seizure. He does not challenge the scope of the search, and therefore we do not address that issue.

## III

Chambers also contends that the evidence at trial was legally insufficient to support his conviction, arguing the State failed to prove the "possession" element of the charged offense.

In a legal-sufficiency case, we examine all the evidence in the light most favorable to the verdict to determine whether a rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This standard of review applies to cases involving both direct and circumstantial evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Uyamadu v. State*, 359 S.W.3d 753, 757 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). We consider all the evidence presented at trial, but we do not substitute our judgment regarding the weight and credibility of the evidence for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *Bradley v. State*, 359 S.W.3d 912, 916 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). We presume the jury resolved conflicting inferences in favor of the verdict, and we defer to that determination. *Clayton*, 235 S.W.3d at 778; *Uyamadu*, 359 S.W.3d at 757. We further determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778; *Bradley*, 359 S.W.3d at 912.

In this case, the State had the burden of proving beyond a reasonable doubt that Chambers intentionally and knowingly possessed cocaine. Tex. Health & Safety Code § 481.115(a). To prove the defendant "possessed" the cocaine, the State was required to prove he exercised actual care, custody, control, or management over it. *Id.* § 481.002(38); *see Blackman v. State*, 350 S.W.3d 588,

594 (Tex. Crim. App. 2011).[3]

In this case, Sanchez testified that the cocaine was in a clear, plastic baggie protruding from between the cheeks of Chambers's buttocks. Sanchez testified that he called Sutton over "to have a second set of eyes to see exactly where it was" because "it's always better to have another officer observe what's going on." Both officers testified that when Sanchez told Chambers he saw the baggie, Chambers's response was that Sanchez got him and that he knew he messed up. At Sanchez's request, Chambers removed the baggie from his buttocks and handed it to Sanchez, who saw that it contained a white, powdery substance that appeared to be cocaine. Sanchez secured the baggie inside a latex glove, and subsequent laboratory testing confirmed that the substance contained cocaine. The record contains no evidence to contradict the officers' testimonies.

We conclude that a rational jury could have believed the officers' undisputed testimonies and found beyond a reasonable doubt that Chambers exercised actual care, custody, control, or management over the cocaine by having it in his buttocks. We overrule this issue.

＊ ＊ ＊

Accordingly, we overrule both of Chambers's issues and affirm the trial court's judgment.


/s/     Jeffrey V. Brown
        Justice

Panel consists of Chief Justice Hedges and Justices Brown and Busby.
Publish — TEX. R. APP. P. 47.2(b).

---

[3]Although the State was also required to prove Chambers knew the substance was cocaine, *see Blackman*, 350 S.W.3d at 594, Chambers does not contest the evidence proving that element of the offense.