ACCEPTED
01-14-00993-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/21/2015 2:12:40 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-14-00993-CR

### IN THE COURT OF APPEALS
### FOR THE FIRST DISTRICT
### HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
4/21/2015 2:12:40 PM
CHRISTOPHER A. PRINE
Clerk

| | | |
|---|---|---|
| **DEMETRUS TREMAINE HORTON** § | | **DEFENDANT-APPELLANT** |
| § | | |
| **VS.** § | | |
| § | | |
| **THE STATE OF TEXAS** § | | **PLAINTIFF-APPELLEE** |

### APPELLANT'S BRIEF

### APPEAL IN CAUSE NO. 1387050
### IN THE 178TH JUDICIAL DISTRICT COURT
### OF HARRIS COUNTY

**SCHNEIDER & McKINNEY, P.C.**

**TOM MORAN**
**TEXAS BAR NO. 14422200**
**440 LOUISIANA, SUITE 800**
**HOUSTON, TEXAS 77002**
**(713) 951-9994**
**TELECOPIER: (713) 224-6008**
**EMAIL: tom6294@aol.com**

**ATTORNEY FOR APPELLANT**

**APPELLANT REQUESTS ORAL ARGUMENT**

# LIST OF PARTIES

The Hon. Leslie Brock Yates (in her official capacity). . . . . . . . . . . . . . Trial Judge
    1201 Franklin
    Houston, Texas 77002

The Hon. Devon Anderson (in her official capacity). . . . . . .  Attorney for the State

Erik M. Locascio (in his official capacity.. . . . . . . . . .  Trial Counsel for the State

    Harris County District Attorney's Office
    1201 Franklin
    Houston, Texas 77002

Brian D. Coyne. . . . . . . . . . . . . . . . . . . . . . . . . . . . Trial Counsel for Appellant
    1914 N. Memorial Drive Way
    Houston, Texas 77007

Tom Moran. . . . . . . . . . . . . . . . . . . . . . . . . . . Appellate Counsel for Appellant
    Schneider & McKinney, P.C.
    440 Louisiana, Suite 800
    Houston, Texas 77002

# TABLE OF CONTENTS

LIST OF PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv
    Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv
    Statutes and Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  v
    Other Authority. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

I.  STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.  STATEMENT CONCERNING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . .  1

III.  ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
    A.  Issue One. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
    Whether Appellant was deprived of the right of effective assistance of counsel
        as guaranteed by the Sixth Amendment, U.S. CONST. amend. VI, not
        being familiar with the law of search and seizure as it applies to
        warrantless searches of persons.. . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
    B.  Issue Two. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
    Whether the trial court erred in overruling Appellant's motion to suppress
        evidence.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

IV.  STATEMENT OF RELEVANT FACTS.. . . . . . . . . . . . . . . . . . . . . . . . . . .  2
    A.  Officer Moela's Initial Testimony. . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
    B.  Hearing on the Motion to Suppress Evidence.. . . . . . . . . . . . . . . . . . .  4
    C.  Officer Moela's Continued Testimony in the Jury's Presence.. . . . . . . . .  7
    D.  Officer Benavidez's Testimony. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

V.  SUMMARY OF THE ARGUMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
    A.  Issue One. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
    B.  Issue Two. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

VI.  ARGUMENTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
    A.  Issue One (Restated). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
        1.  The Test for Effective Assistance of Counsel. . . . . . . . . . . . . . .  10

2. Appellant Was *Not* Under Arrest When Searched. . . . . . . . . . . . 11

3. If Appellant Was Under Arrest, the Arrest Was Unlawful. . . . . . 13

4. The Warrantless Search Was Constitutionally Impermissible. . . 14

5. Trial Counsel Was Ineffective. . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    a. Trial Counsel Lacked a Firm Understanding of the Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    b. Appellant Was Prejudiced. . . . . . . . . . . . . . . . . . . . . . . . . . 21

    c. There Can Be No Reasonable Trial Strategy. . . . . . . . . . . 22

    d. Conclusion as to Issue One. . . . . . . . . . . . . . . . . . . . . . . . . 22

   B. Issue Two (Restated). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# INDEX OF AUTHORITIES

## Cases

*Chambers v. Maroney,* 399 U.S. 42 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Baldwin v. State,* 278 S.W.3d 367 (Tex. Crim. App. 2009) . . . . . . . . . . . . . . . . 15

*Baldwin v. State,* 278 S.W.3d 367 (Tex. Crim. App. 2009) . . . . . . . . . . . . . . . . 12

*Berkemer v. McCarty,* 468 U.S. 420 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Chambers v. State,* 397 S.W.3d 777 (Tex. Crim. App. 2013). . . . . . . . . . . . . . . 12

*Estrada v. State,* 154 S.W.3d 604 (Tex. Crim. App. 2005). . . . . . . . . . . . 13, 19-21

*Ex parte Welborn,* 785 S.W.2d 391 (1990). . . . . . . . . . . . . . . . . . . . . . . 10, 11, 22

*Frangias v. State,* 392 S.W.3d 642 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . 10

*Griffin v. Wisconsin,* 483 U.S. 868 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Minnesota v. Dickerson,* 508 U.S. 366 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Missouri v. McNeely,*    U.S.   , 133 S. Ct. 1552 (2013). . . . . . . . . . . 15-17, 20, 21

*Riley v. California,*    U.S.   , 134 S. Ct. 2473 (2014). . . . . . . . . . . . . . . . . . . . . 16

*Rodriguez v. United States,* No. 13-9972 (U.S. April 21, 2015) (not yet reported)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Sibron v. New York,* 392 U.S. 40 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*State v. Granville,* 423 S.W.3d 399 (Tex. Crim. App. 2014) . . . . . . . . . . . . . . . 19

*State v. Ortiz,* 382 S.W.3d 367 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . . . . 11

*State v. Sheppard,* 271 S.W.3d 281 (Tex. Crim. App. 2008). . . . . . . . . . . . . . . . 12

*State v. Steelman,* 93 S.W.3d 102 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . 13

*State v. Villarreal,* No. PD-0306-14 (November 26, 2014) (not yet reported). . 15-17, 20, 21

*Strickland v. Washington,* 466 U.S. 668 (1964). . . . . . . . . . . . . . . . . . . . . . . . . 10, 22

*Terry v. Ohio,* 392 U.S. 1 (1967).. . . . . . . . . . . . . . . . . . . . . 10, 12, 14, 15, 20, 24

*United States v. Jordan,* 232 F.3d 447 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 12

*Wright v. State,* 7 S.W.3d 148 (Tex. Crim. App. 1999). . . . . . . . . . . . . . . . . . 14, 15

**Statutes and Rules**

Tex. Code Crim. Proc. Ann. art. 14.01. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tex. Code Crim. Proc. Ann. art. 14.03. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tex. Code Crim. Proc. Ann. art. 14.04. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tex. Code Crim. Proc. Ann. art. 38.22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tex. Const. art. I, § 10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Tex. Const. art. I, § 9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 20, 22, 23

Tex. R. App. P. 38. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Tex. R. App. P. 9.4(i)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Tex. R. App. P. 9.4(i)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

TEX. TRANS. CODE ANN. § 543.003. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

U.S. CONST. amend. IV. . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14, 15, 20, 22, 23

U.S. CONST. amend. VI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 23

## Other Authority

TEX. DISCIPLINARY R. PROF'L CONDUCT  Rule 3.03(a)(4) . . . . . . . . . . . . . . . . . 21

**TO THE JUSTICES OF THE COURT OF APPEALS:**

**COMES NOW DEMETRUS TREMAINE HORTON,** Appellant herein, by and through his attorney, **TOM MORAN,** and pursuant to TEX. R. APP. P. 38, files this appellate brief and in support thereof, would show the Court as follows:

## I. STATEMENT OF THE CASE

Appellant was charged by indictment with possession of 1-4 grams of controlled substance, enhanced by two prior felony convictions. C.R.-12.[1] He was convicted in a jury trial and the trial court assessed his punishment at 25 years incarceration. R.R. 115-18. Appellant filed a timely notice of appeal, C.R. 120-21, 124-25, and this appeal follows.

## II. STATEMENT CONCERNING ORAL ARGUMENT

This case presents the issue of whether a police officer may conduct a warrantless search of a person during an investigative detention when there is no reasonable suspicion that the defendant is armed.

Appellant asserts that warrantless searches of not under arrest persons are impermissible under the Fourth Amendment unless the officer has reasonable suspicion that the suspect is armed.

He believes oral argument would be helpful to the Court.

_____

[1]"C.R." refers to the Clerk's Record.

1

## III. ISSUES PRESENTED

### A. Issue One

Whether Appellant was deprived of the right of effective assistance of counsel as guaranteed by the Sixth Amendment, U.S. CONST. amend. VI, not being familiar with the law of search and seizure as it applies to warrantless searches of persons.

### B. Issue Two

Whether the trial court erred in overruling Appellant's motion to suppress evidence.

## IV. STATEMENT OF RELEVANT FACTS

Trial defense counsel filed a pretrial motion to suppress. C.R. 21-23. The relevant paragraph in the motion reads in full:

> The evidence to be used against Defendant was seized in violation of the United States Constitution and the Constitution of the State of Texas. Defendant was not under arrest and the officer was not conducting a legal pat-down of Defendant.

C.R. 21.

### A. Officer Moela's Initial Testimony

Houston Police Officer Gerald Meola, his partner Officer John Eric Benavidez and a chemist were the State's only witnesses. Meola testified he stopped Appellant for a traffic violation – cutting across three lanes of traffic and exiting a freeway

2

without signaling. R.R.-III-13.[2] After Moela turned on his lights, Appellant pulled into a parking lot and stopped without incident. He was alone in his car *Id.,* at 14.

Moela testified that when he approached the car, he smelled PCP, which he described as similar to embalming fluid. *Id.,* 14-15.[3] Moela testified that at that point he had "probable cause" to order Appellant out of the car. He patted him down and found no contraband "at that point."[4] Moela then "handed him off" to his partner and searched Appellant's car. *Id.,* at 16-17. He did not find anything. *Id.,* at 17. He then had his partner search the car, also with no result. *Id.,* at 17-

Moela testified that he smelled PCP on Appellant, so he thought the drug was in his shorts or underwear. *Id,* at 17-18. He stepped back, saw a bulge in Appellant's left sock and thought that was where the PCP was. *Id.,* at 18. He handcuffed Appellant because people on PCP "can become violent from one second to the next." *Id.,* at 19.[5] Moela described Appellant's behavior as "very methodical. I would ask him a question and he would pause a couple of seconds and then he would just

---

[2]"R.R." refers to the Reporter's Record. The Roman numeral is the volume number and the Arabic numerals are the cited pages. Therefore, R.R.-III-13 is volume 3, page 13 of the Reporter's Record.

[3]Moela testified he had no formal training in recognizing the smell of PCP. He picked up that knowledge by dealing with it on the street about 40-50 times. R.R.-III-15.

[4]Appellant was wearing a T-shirt, basketball shorts, open toed sandals and socks. R.R. III-18.

[5]Moela also testified that in his eight years as a Houston police officer he had never encountered a violent person on PCP but he had heard stories. R.R. III-19-20.

3

answer my question." He testified that behavior was indicative of someone who had smoked or was in possession of PCP. *Id.*

When asked by the State whether he knew the effects of PCP on a person, Moela first asked the prosecutor, "Formally or just my personal experiences?" The prosecutor replied, "In your experience, 8 years as a police office, have you come into contact with people who are on PCP?" Moela replied, "Yes." *Id.*

He continued: "Best way I can describe is like a zombie. They're there but their lights aren't on." *Id.,* at 20. Moela testified he reached into Appellant's sock and pulled out three cigarettes "coated with PCP." He identified the cigarettes as State's Exhibit 4. *Id.*, at 20-21.

## B. Hearing on the Motion to Suppress Evidence

At this point, the State moved to introduce State's Exhibit 4 and trial defense counsel replied, "We have no objection, Your Honor." *Id.,* at 21.

At that point, the trial judge called counsel to the bench. It then excused the jury to conduct a hearing on the motion to suppress evidence. *Id.,,* at 22-23. The trial court told trial counsel that despite his statement of no objection, he had told the court earlier that he wanted a hearing on his motion to suppress evidence. It said it had heard the officer's testimony and asked trial defense counsel if he had any further cross examination for the motion to suppress. *Id.,* at 23.

4

Moela testified outside the jury's presence that he stopped Appellant and got him out of the car because he saw Appellant commit a traffic violation and he smelled PCP in the car. *Id.,* at 24. Both Moela and his partner searched the car and found no contraband. *Id.* He testified his offense report described Appellant as wearing a white T-shirt and blue, above the knee shorts. *Id.*

There was the following exchange between counsel and Moela:

Q. So, other than your suspicion or the odor that you smelled, you had no reason to think that there had been any crime committed other than a traffic violation at that point, correct?

A. At the time I was searching the vehicle I had reasonable suspicion to believe there was narcotics inside the vehicle was the reason why I was searching it.

Q. That proved not to be true, correct?

A. Inside the vehicle, that's correct.

*Id.,* at 25.

Moela admitted he did not have a warrant to search anything. *Id.,* at 26. The examination continued:

Q. When you observed Mr. Horton standing after you had completed your search of the vehicle, you said you saw a bulge in his sock?

A. A bulge in his left sock, correct.

Q. How big a bulge was that?

5

A.   Not -- it wasn't like a golf ball size, but it was big enough to catch my attention.

Q.   *Did you think it was a weapon?*

A.   *No.*

Q.   But at that time you still didn't have a warrant to search him, did you?

A.   I did not.

Q.   Did you perform a pat down before you went into his sock?

A.   I did but only on his waistband and his upper body, like I said previously, because he was wearing sandals. I wasn't paying too much attention to his feet.

Q.   But you didn't perform a pat down on his socks or ankles or feet, did you?

A.   No. I already had probable cause at that point.

Q.   So, rather than perform a pat down, you just opened his sock and reached in and pulled out what you say was contained in a plastic bag and it turned out to be three cigarettes, correct?

A.   Correct, because I had probable cause.   I just reached into his sock, pulled out the contraband.

Q.   What was your probable cause based on,  just the suspicious odor?

A.   The odor of PCP.

*Id.,*  at 26-27 (emphasis added).

6

In argument, trial defense counsel told the trial court that Moela had no reason to search Appellant's sock and that the proper procedure would have been to perform a pat down to determine if there was any contraband before performing the search. *Id.,* at 30-31. The State argued that while the search and arrest were warrantless, Moela had probable cause that there was PCP either in the vehicle or on Appellant's person. It further argued that after searching the car and finding nothing, the officer had probable cause that it was on Appellant. Because he could not hide it in pockets of his shorts and after seeing the bulge in Appellant's sock, the PCP could not be anywhere else. It argued that based on the totality of the circumstances, the officer had probable cause to search and arrest Appellant. *Id.,* at 31.

The trial court overruled the motion to suppress evidence. *Id.*

**C. Officer Moela's Continued Testimony in the Jury's Presence**

Most of the remainder of Moela's direct examination relates to chain of custody and is not relevant to this appeal.

Moela testified that after the cigarettes in State's Exhibit 4 were seized, Appellant asked to make a telephone call. Moela said Appellant gave him a telephone number, he dialed it on Appellant's cell phone and, after it started to ring, he put the phone on Appellant's ear. *Id.,* at 35-36. Moela testified Appellant said he had gotten pulled over and, "they have my sherm." Moela further testified that

7

"sherm" is a street name for a cigarette dipped in PCP. *Id.,* at 37.

## D. Officer Benavidez's Testimony

Moela's partner, Officer John Eric Benavidez also testified about the stop and arrest. His testimony was after the trial court ruled on the motion to suppress evidence and the admission of State's Exhibit 4. Generally, his testimony mirrored Moela's testimony.

He testified that after Moela got Appellant out of the car, he "handed him off" to Benavidez, who ran a computer check for outstanding warrants. He did not say what he found but he further testified he did not take control of Appellant, who was outside the vehicle and not handcuffed. *Id.,* at 73. After both he and Moela had searched Appellant's car, they did not let Appellant go because "we hadn't searched his person." *Id.* He said they searched Appellant for the same "probable cause, strong odor of PCP." *Id.,* at 74.

Appellant testified in his own defense. Generally, his testimony was that he bought less than a gram of PCP and dipped his cigarettes into the liquid. *See generally, Id.,* at 77-97.[6]

---

[6]The trial court included a charge on the lesser included offense of possession of less than a gram of PCP. C.R. 106-07.

## V. SUMMARY OF THE ARGUMENTS

### A. Issue One

To provide effective assistance of counsel, an attorney must have a firm grasp of the facts and the applicable law of the case. In the instant case, trial counsel failed to have a firm grasp of the applicable law.

The record affirmatively reflects that trial counsel was unfamiliar with the difference between investigative detentions and arrest as well as the concepts of reasonable suspicion and probable cause and exceptions to the warrant requirement for both searches and arrests. This caused him to fail to make specific arguments to the trial court in support of his motion to suppress evidence, including but not limited to, whether in view of recent case law, police may conduct a warrantless search of a person who is not under arrest.

Trial counsel's errors prejudiced Appellant by depriving him of a fair opportunity to litigate a meritorious motion to suppress and to appeal an adverse ruling.

### B. Issue Two

Appellant was stopped on traffic. The Supreme Court and Court of Criminal Appeals have held that a traffic stop is akin to an investigatory detention, not an

9

arrest.[7]  The only justification for a warrantless search of a person not under lawful arrest is if there is a reasonable suspicion that he is armed.  *Terry v. Ohio,* 392 U.S. 1 (1967).  Moela made no claim Appellant was armed at the time he searched Appellant's sock.  To the contrary, he testified that he had frisked Appellant and that Appellant was unarmed.

## VI.  ARGUMENTS AND AUTHORITIES

### A.  Issue One (Restated)

Whether Appellant was deprived of the right of effective assistance of counsel as guaranteed by the Sixth Amendment, U.S. CONST. amend. VI by not being familiar with the law of search and seizure as it applies to warrantless searches of persons.

### 1.  The Test for Effective Assistance of Counsel

Texas follows the two-prong deficient performance/prejudice test set out by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1964).  In *Ex parte Welborn,* 785 S.W.2d 391, 393 (1990), the Court of Criminal Appeals held that to provide effective assistance of counsel, a lawyer must have a firm grasp of both the facts of the case and the applicable law.  *See also Frangias v. State,* 392 S.W.3d 642,

---

[7]While the Transportation Code appears to make traffic stops arrests as a matter of Texas law, *see* TEX. TRANS. CODE ANN. § 543.003, if in fact they arrests, it would cause a sea change in investigations and prosecutions of such offenses as driving while intoxicated because the full panoply of rights for persons in custody would apply.  So, for example, TEX. CODE CRIM. PROC. ANN. art. 38.22 would apply to questioning of any person stopped on traffic.

10

653 (Tex. Crim. App. 2013) (citing *Welborn* for the proposition that reviewing courts defer to trial counsel's strategic decisions as long as they are based on adequate investigation of the facts and governing law).

In the instant case, the record clearly reflects that counsel was unfamiliar with both Texas law on preservation of error, the difference between an investigatory detention and a full custody arrest as well as the difference in the right of officers with reasonable suspicion that a person is armed to conduct a pat down search and the right of officers to conduct a warrantless search for evidence of a person who is not in custody.

In view of these errors, Appellant will discuss the applicable law, law which also is applicable to his Issue Two on denial of the motion to suppress evidence.

## 2. **Appellant Was *Not* Under Arrest When Searched**

A traffic stop normally is an investigative detention, not an arrest. *Rodriguez v. United States,* No. 13-9972 (U.S. April 21, 2015) (not yet reported), slip op. at 5,[8] *Berkemer v. McCarty,* 468 U.S. 420 (1984); *State v. Ortiz,* 382 S.W.3d 367 (Tex. Crim. App. 2012). The initial detention and stop was a traffic stop for making a lane change without signaling. Being handcuffed by Moela did not escalate the traffic

---

[8]"A stop for a traffic violation justifies a police investigation of that violation. '[A] relatively brief encounter,' a routine traffic stop is 'more analogous to a so-called '*Terry* stop*' *.... than a formal arrest.'" (internal citations omitted).

11

stop from a *Terry*-type investigative detention to a full custody arrest.[9]

There is no bright line between a *Terry* detention and an arrest. The mere act of handcuffing a person does not automatically convert an investigatory detention into an arrest. *State v. Sheppard,* 271 S.W.3d 281, 289 (Tex. Crim. App. 2008). During an investigative detention, an officer may use the force reasonably necessary to effect the goal of the detention, maintain the status quo or for officer safety. *Chambers v. State,* 397 S.W.3d 777, 781 (Tex. Crim. App. 2013). For example, in *Chambers,* the Court of Criminal Appeals determined that Chambers was not arrested even though handcuffed because the handcuffing was reasonably necessary to protect the officer and those around him. *Id.,* at 783. *See also United States v. Jordan,* 232 F.3d 447 (5th Cir. 2000) (handcuffing a suspect does not automatically convert an investigatory stop into an arrest), *cited with approval in Baldwin v. State,* 278 S.W.3d 367, n. 4 at 374 (Tex. Crim. App. 2009) (Cochran, J., concurring).

In the instant case, Moela testified he handcuffed Appellant because he believed Appellant was on PCP and people on PCP "can become violent from one second to the next." Thus, just like the officer in *Chambers,* Moela acted restrain Appellant for the officer's safety. This is consistent with Benavidez's testimony that

---

[9]In *Rodriguez,* Justice Thomas distinguishes between a traffic stop based on reasonable suspicion and one based on probable cause. Slip op., at 8 (Thomas, J., dissenting). He acknowledges the Majority rejected this distinction. *Id*.

12

Appellant was not released because he had not yet been searched. If Appellant had been under arrest, Benavidez would have said so.

### 3. If Appellant Was Under Arrest, the Arrest Was Unlawful

In *Estrada v. State,* 154 S.W.3d 604, 608 (Tex. Crim. App. 2005), the Court of Criminal Appeals, explaining its holding in *State v. Steelman,* 93 S.W.3d 102 (Tex. Crim. App. 2002), held that while the smell of burning marijuana can constitute probable cause to search, it does not constitute probable cause that a person committed the offense of possession of marijuana in the officers' presence. This is based on the truth that the smell of marijuana and PCP will remain after the drug is gone.[10] Moela's testimony was that his sole probable cause was the smell of PCP. As *Estrada* explains, that is not sufficient probable cause that a crime is being committed in the officer's presence.

Chapter 14 of the Code of Criminal Procedure limits peace officers' authority to make warrantless arrests. A peace officer may arrest anyone who commits a crime in his presence, TEX. CODE CRIM. PROC. ANN. art. 14.01. Other provisions of Chapter 14 grant officers the authority to make warrantless arrests in certain limited circumstances involving specific offenses such as family violence or drunk driving,

---

[10]The best example of this truth is the testimony of the two officers that they smelled PCP in Appellant's vehicle but found none after a thorough search of the car.

13

TEX. CODE CRIM. PROC. ANN. art. 14.03, and if there is probable cause that a felony has been committed and the suspect is about to escape, TEX. CODE CRIM. PROC. ANN. art. 14.04.

None of these exceptions authorize an arrest in the instant case. There is no allegation that Appellant had committed a crime of family violence or any other offense set out in Article 14.03. At the time of the search, Appellant was 1) handcuffed and 2) in custody as part of the investigative stop for the traffic offense. He was not about to escape such that the officers had no time to procure a warrant. Thus, a warrantless arrest for possession of PCP prior to the search was not authorized by Chapter 14 and a later arrest was the product of an unconstitutional search.

### 4. The Warrantless Search Was Constitutionally Impermissible

Probable cause to search and permissible warrantless searches are separate concepts. An officer may have probable cause to search but in the absence of a warrant or a recognized exception to the warrant requirement, a warrantless search is a Fourth Amendment/Article I, § 9 violation. While the Court of Criminal Appeals has said in *dicta* the Supreme Court authorizes a police officer to conduct a warrantless search of a person for contraband, *see e.g., Wright v. State,* 7 S.W.3d 148, 150 (Tex. Crim. App. 1999), that is incorrect. *Terry* frisks are limited to searches for

14

weapons. In fact, one of the cases cited in *Wright, Minnesota v. Dickerson,* 508 U.S. 366, 373 (1993), specifically holds that a *Terry* frisk is strictly limited to searches for weapons.[11] If it goes beyond what is necessary to determine if a suspect is armed, the fruits must be suppressed. *See also, Sibron v. New York,* 392 U.S. 40, 65-66 (1968). *See also Baldwin v. State,* 278 S.W.3d 367, 371-72 (Tex. Crim. App. 2009) (holding that contraband found by "plain feel" during a weapons pat down is admissible but probable cause is necessary to search other than for weapons).

In the instant case, at the time of the search of Appellant's sock, 1) there was no evidence in the record that the officers had reasonable suspicion *at any time* that Appellant was armed, and 2) Moela previously had conducted a pat down – permissible under *Terry* or not – in which Moela determined that Appellant was unarmed. At that point, there was no exception to the Fourth Amendment, Article I, § 9 warrant requirement allowing a search of Appellant's sock.

This case was tried and the motion to suppress argued on December 2, 2014. R.R. III-3. This is after the Court of Criminal Appeals handed down its decision in *State v. Villarreal,* No. PD-0306-14 (November 26, 2014) (not yet reported), and long after the Supreme Court handed down *Missouri v. McNeely,* __ U.S. __, 133 S. Ct.

---

[11]Of course, if during a proper *Terry* frisk, an officer discovers something immediately recognizable as contraband, he is not required to ignore it and the contraband is not subject to suppression.

15

1552 (2013), on April 7, 2013.

One section of *Villarreal* is titled by the Court of Criminal Appeals "1. A Search of a Person Pursuant to a Criminal Investigation Requires a Search Warrant or Recognized Exception to a Warrant." Slip op. at 25. In that section, the Court of Criminal Appeals cited *McNeely,* __ U.S., at __, 133 S. Ct., at 1558, and *Riley v. California,* __ U.S. __, __, 134 S. Ct. 2473, 2482 (2014), for the proposition that a warrantless search of people to further a criminal investigation is reasonable only if it falls within a recognized exception to the warrant requirement. Slip op., at 26.

None of the exceptions to the warrant requirement apply to the warrantless search of Appellant. There is no evidence that Appellant consented to a search of his person or that he was even asked for consent. Appellant's car was searched and no contraband was found. Appellant was not under arrest at the time he was searched. The special needs doctrine set out in the cases cited by the Court of Criminal Appeals in *Villreal*, *Griffin v. Wisconsin,* 483 U.S. 868 (1987), involved the special need for states to conduct searches of probationers in order to properly operate a probation program, a program involving persons who are under supervision of the state. Special needs is a very narrow exception to the warrant requirement inapplicable to the instant case..

Of importance to the analysis of peace officers to conduct a warrantless search

16

of a person is a careful reading of *McNeely*. *McNeely* does not limit the warrant requirement for searches of persons to blood draws in DWI investigations. To the contrary, the Court held that DWI blood draws are included in the general prohibition of warrantless searches of persons. The Court wrote:

> The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." Our cases have held that a warrantless search of the person is reasonable only if it falls within a recognized exception. That principle applies to the type of search at issue in this case, which involved a compelled physical intrusion beneath McNeely's skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation. Such an invasion of bodily integrity implicates an individual's "most personal and deep-rooted expectations of privacy."

_ U.S., at _, 133 S. Ct., at 1558 (internal citations omitted).

Thus, *McNeely* and *Villareal* hold warrantless searches of persons generally are unreasonable and a blood draw is one of those types of searches. Stated differently, warrantless searches of persons are unreasonable absent some exception to the warrant requirement and blood draws are one genre of searches requiring warrants or an exception to the warrant requirement such as exigent circumstances.

There is no exception to the warrant requirement applicable to the instant case authorizing the officers to search Appellant for contraband. Therefore, the trial court should have suppressed the PCP cigarettes found in Appellant's sock.

17

## 5. Trial Counsel Was Ineffective

### a. Trial Counsel Lacked a Firm Understanding of the Applicable Law

Trial counsel's full argument to the trial court was:

MR. COYNE: Yes, Your Honor. I would like to point out that the officer did perform a warrantless arrest on Mr. Horton. He failed to follow proper procedures. He really had absolutely no reason to search my client's socks. There was a – he said a small – I mean, we know what was contained in the sock according to the officer was three cigarettes, which do not create a bulge, not even if they're in a sandwich bag. I think that his proper procedure would have been to perform a pat-down search of this suspect to see if they were able to locate any type of contraband that would allow them to further search and that wasn't done, Judge. And with that, I would ask that you suppress this evidence.

R.R. III-30-31.

The State's full argument was:

MR. LOCASCIO: Your Honor, the arrest and search were warrantless but as Officer Meola testified, he had probable cause that there was PCP either somewhere on the defendant or in the vehicle. He methodically checked the vehicle, didn't find PCP, looked at the defendant, and was still getting a very, very strong odor of the chemical odor of PCP and therefore had the probable cause. Additionally, looking at the – when he saw the bulge in his sock, that tipped him off to it could possibly be there, especially in light of the fact the defendant was wearing pocketless basketball shorts where he couldn't be hiding it really anywhere else. *Based on the totality of the circumstances, the officer had probable cause the crime was being committed and, therefore, was able to search the defendant and arrest him based on that.*

R.R. III-3. (Emphasis added).

18

The italicized portion of the State's argument is an admission that the arrest was for possession of drugs. This means that the State acknowledges Appellant was not under arrest until the drugs were found. Even if the arrest for possession of PCP was before the search, the search would have been the product of an illegal arrest because the smell of drugs standing alone is insufficient under *Estrada* to be probable cause that an offense was committed in the officer's presence. *See State v. Granville,* 423 S.W.3d 399, 410 (Tex. Crim. App. 2014) (warrantless search permissible pursuant to *lawful* arrest).

The generic language in the motion to suppress evidence is sufficient to raise the issue of the constitutionality of the warrantless search and whether Appellant was under arrest. However, in his argument to the trial court, trial counsel essentially 1) admitted a warrantless arrest and 2) based his argument on "proper procedure," which he said was to conduct a pat down to see if they could locate contraband and therefore proceed further in a search. In fact, Appellant was not under arrest and if he had been, the search would have been permissible as a search incident to arrest only if the arrest was legal. In his oral argument, trial counsel abandoned the argument in his written motion to suppress that it was an illegal pat down. To the contrary, he asserted Moela *should* have conducted a pat down. Trial counsel never argued orally or in writing that Appellant was not under arrest and he did not distinguish between

19

an investigatory detention under *Terry* and a full custody arrest. He he never argued – either in his generic written motion to suppress or orally – that warrantless searches of persons are Fourth Amendment/Article I, § 9 violations in the absence of a recognized exception to the warrant requirement

*McNeely* and *Villarreal* were decided before the trial in the instant case and the hearing on the motion to suppress. Both the Supreme Court and the Court of Criminal Appeals held in those cases that warrantless searches of persons are unreasonable unless they fall within an exception to the warrant requirement, something not present in the instant case. *Villarreal,* was handed down and placed on the internet only six days before the trial in the instant case. All trial counsel had to do was look at the most recent handdowns from the Court of Criminal Appeals to find *Villarreal.*[12] Neither trial counsel nor the attorney for the State appeared to recognize the necessity for a warrant to search a person. The attorney for the State argued that the smell of PCP was sufficient probable cause that a crime was being committed, justifying a warrantless search and warrantless arrest, *Estrada* notwithstanding. At most, the officers had probable cause to obtain a search

---

[12]On November 26, 2014, the Court of Criminal Appeals released only three opinions on petitions for discretionary review. http://www.search.txcourts.gov/handdown.aspx?coa=coscca&fulldate=11/26/2014 (visited April 15, 2015). Surely, reading three opinions is not too much of a task for a lawyer about to begin a trial in which his client faces 25 years to life in prison.

warrant for Appellant's person, not make a warrantless arrest in violation of Chapter 14.

It is apparent from the record that neither trial counsel nor the prosecutor was familiar with the holdings in *McNeely* and *Villarreal* that searches of persons require warrants.[13] Neither was familiar with *Estrada.* It also is apparent that neither lawyer was familiar with Chapter 14 of the Code of Criminal Procedure or chose to ignore it.

It follows directly that trial counsel's performance was deficient for purposes of *Strickland* based on his lack of a firm grasp of the applicable law.

### b. Appellant Was Prejudiced

The criminal act alleged in the instant case was possession of a controlled substance, PCP. The PCP was located by the police based on an illegal, warrantless search of Appellant's person. Without the PCP-laced cigarettes in evidence and the testimony from the chemist that they contained PCP, there is a reasonable probability that the result would have been different, that is, there would have been a directed verdict of acquittal. Therefore, Appellant was prejudiced for purposes of *Strickland.*

---

[13]If the prosecutor was aware of and understood the holdings in *McNeely* and *Villareal,* and failed to disclose them to the trial court, he was acting unethically. TEXAS DISCIPLINARY R. PROF' CONDUCT, Rule 3.03(a)(4) (A lawyer shall not knowingly...fail to disclose to the tribunal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.)

### c. There Can Be No Reasonable Trial Strategy

Both the Supreme Court in *Strickland* and the Court of Criminal Appeals in *Wellborn* recognize that trial lawyers have to make strategic decisions which should be respected if they are based on a firm understanding of the applicable law and the facts. In the instant case, regardless of trial counsel's grasp of the facts, the record shows he had no clue as to the applicable law.

There can be no rational trial strategy in failing to raise constitutionally relevant and viable arguments in a motion to suppress evidence when the charge against the client is possession of the evidence sought to be suppressed.

### d. Conclusion as to Issue One

Prior to voir dire, Appellant told the trial court that trial counsel had told him that he could not beat the case. R.R. II-7. Trial counsel was wrong. He had a viable motion to suppress evidence. He simply failed to present it properly because he did not know the applicable law.

Trial counsel did not argue, either orally or in writing, his Fourth Amendment/Article I, § 9 illegal search claim. In his oral argument to the trial court he affirmatively misstated the law by saying that the officer should have conducted a non-*Terry* pat down before he searched Appellant's sock. He effectively abandoned and failed to present arguments showing the warrantless search of Appellant's person

22

was a constitutional violation and not authorized by any exception to the warrant requirement recognized by the Supreme Court of the United States or the Court of Criminal Appeals.

As shown, *supra.,* Appellant was not under arrest at the time of the search, the officers lacked probable cause that he had committed an offense in their presence and that a search of a person for contraband, other than one incident to a lawful arrest or some other recognized exception to the warrant requirement is a Fourth Amendment/Article I § 9 violation.

Trial counsel failed to provide the level of representation guaranteed by the Sixth Amendment, U.S. CONST. amend. VI, and the Texas Constitution, TEX. CONST. art. I, § 10. He essentially waived his motion to suppress with his arguments to the trial court even though the evidence adduced from Moela showed the search violated the Texas and United States Constitutions. He was unfamiliar with the law, including at one case decided by the Court of Criminal six days before the trial. The only defense he presented and argued was that the three cigarettes, which the chemist testified weighed 2.98 grams,[14] weigh less than a gram without the filters. *See generally,* R.R. III-102-05. He asked the jury to convict Appellant of possession of less than a gram of PCP. *Id.,* at 105-06. He presented no evidence as to how much

---

[14]R.R. III-54.

23

the filters weigh.

Due to trial counsel's failure to understand applicable search and seizure law and to argue it to the trial court adequately and competently, Appellant was convicted of a crime for which he should have been acquitted or which should have been dismissed after the motion to suppress was granted.

## B. Issue Two (Restated)

Whether the trial court erred in overruling Appellant's motion to suppress evidence.

This issue is briefed in conjunction with Issue One, ineffective assistance of counsel. Appellant adopts by reference § VI(A)(2) through § VI(A)(5)(a) as the arguments and authorities for this issue.

The seizure of the PCP from Appellant's person was, in the words of the motion to suppress evidence, "in violation of the United States Constitution and the Constitution of the State of Texas. Defendant was not under arrest and the officer was not conducting a legal pat-down of Defendant."

While the search of Appellant's vehicle probably passed constitutional muster based on the automobile exception to the warrant requirement, *Chambers v. Maroney,* 399 U.S. 42 (1970), there is nothing in the record indicating Moela had reasonable suspicion to conduct *Terry* pat down for weapons. Even so, once Moela

24

was assured Appellant was unarmed by that pat down, regardless of its legality, there was no constitutionally viable reason for the warrantless search of Appellant's person.

For these reasons, this Court should reverse the trial court's order overruling his motion to suppress evidence, vacate the conviction and remand for a new trial.

**WHEREFORE, PREMISES CONSIDERED,** Appellant prays that this Court grant oral argument, reverse the trial court's decision on the motion to suppress evidence, vacate the conviction and remand for a new trial.

Respectfully submitted,
Schneider & McKinney, P.C.


/s/ Tom Moran
Tom Moran
Texas Bar No. 14422200
440 Louisiana, Suite 800
Houston, Texas 77002
(713) 951-9994
Telecopier: (713) 224-6008
Email: tom6294@aol.com

Attorney for Appellant

25

**CERTIFICATE OF COMPLIANCE**

Pursuant to TEX. R. APP. P. 9.4(i)(3), I certify that the above document contains 5,675 words, excluding the portions excluded in TEX. R. APP. P. 9.4(i)(1).

/s/Tom Moran
Tom Moran

**CERTIFICATE OF SERVICE**

I certify that the above brief was served on the State of Texas through electronic filing and by delivering a copy to the Harris County District Attorney's Office, ATTN: Appellate Division, 1201 Franklin, Houston, Texas 77002 on this 21st Day of April, 2015.

/s/ Tom Moran