**Affirmed and Memorandum Opinion filed December 6, 2022.**



In The

# Fourteenth Court of Appeals

---

NO. 14-21-00664-CR
NO. 14-21-00665-CR

---

**THE STATE OF TEXAS, Appellant**

**V.**

**JESSIE JEROME WHITE, Appellee**

---

**On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Cause Nos. 18-DCR-081242 & 18-DCR-081243**

---

## MEMORANDUM OPINION

The State of Texas brings this appeal from the trial court's order granting appellee Jessie Jerome White's motion to suppress. The State charged appellee with two counts of felony theft of property. Appellee filed a motion to suppress in both cases. The trial court granted the motions to suppress, prompting this appeal by the State. We affirm.

BACKGROUND

Deputy Jacob Medve of the Fort Bend County Sheriff's Office testified at the hearing on the motion to suppress. Deputy Medve was patrolling on the day of the alleged offense in an area where he had been told to patrol due to recent tractor thefts. Deputy Medve received a call about a suspicious vehicle, which he investigated and determined that the abandoned vehicle was suspected in some recent tractor thefts. Deputy Medve called Detective Robert Hartfield, with whom Medve had worked tractor-theft cases. Detective Hartfield recognized the vehicle as one that belonged to Nelson White, appellee's brother. Deputy Medve then contacted Chief Michael Dickerson of the Needville Police Department as backup to aid in checking the area for any other suspicious activity. Chief Dickerson and Deputy Medve met in the parking lot where Nelson White's vehicle had been abandoned.

Chief Dickerson informed Deputy Medve that he had recently seen another vehicle pulling a trailer carrying a John Deere tractor. Due to the recent thefts and a report the day before of a stolen John Deere tractor, Chief Dickerson and Deputy Medve waited to see if that vehicle would pass the intersection where Nelson White's truck was parked. Chief Dickerson testified that there was no other direction the truck could have driven.

When the truck pulling the tractor and trailer did not return, both officers left the area and observed the truck with the tractor and trailer stuck in the mud in a nearby hay meadow. The officers parked behind the truck, got out of their vehicles, and attempted to make contact with the driver. Deputy Medve testified that he did not have information that appellee was connected to the theft of the John Deere tractor. Neither officer knew that the tractor seen by Chief Dickerson was stolen.

Chief Dickerson walked to the passenger side and "began to give him the driver's commands to roll down the window, open the door so that we can talk to

him." The driver, later identified as appellee, did not respond. Deputy Medve, who was on the driver's side, saw appellee stabbing a cell phone with a knife. At that time Deputy Medve drew his service weapon and commanded appellee to put down the knife and open the door.

Chief Dickerson also drew his weapon, walked around to the driver's side, and began giving commands for the driver to get out of the truck. By the time Chief Dickerson got in front of the truck, appellee was opening the door and said, "It's me, Dickerson. Don't shoot." Appellee "openly exit[ed]" the truck, was placed in handcuffs and detained for further investigation. At that time, Chief Dickerson holstered his weapon and appellee was "immediately detained." Deputy Medve placed appellee in the back of his patrol car until Detective Hartfield arrived. Deputy Medve testified that appellee was under investigation "[i]n reference to the tractor and trailer." Deputy Medve admitted on cross-examination that he had no information that appellee was involved in the reported theft of a tractor the previous day. When asked why appellee was detained Chief Dickerson testified, "We didn't know what was going on at the time. It's suspicious that when we make contact with somebody, and they don't roll down the window and they won't get out of the vehicle, and they won't even acknowledge us."

Detective Hartfield, an auto theft detective with the Fort Bend County Sheriff's Office, arrived a short time later and "took over the scene." While Detective Hartfield investigated the ownership of the tractor and trailer, appellee was handcuffed in the back of the patrol car for approximately one and a half hours. Detective Hartfield testified that officers were on high alert in the area due to the number of tractor thefts. When Detective Hartfield arrived, he learned that appellee did not own the tractor or the trailer. Detective Hartfield discovered the individual who owned the trailer and contacted him as part of his investigation. The trailer

owner had not given permission for anyone else to drive his trailer. The trailer owner had to drive to Booth, a town approximately 30-45 minutes away, to determine whether his trailer was on his property where he had left it. Upon arriving in Booth, the trailer owner notified Detective Hartfield that his trailer was missing. At that time appellee was arrested for theft. Detective Hartfield then contacted the owner of the tractor by running the Vehicle Identification Number. Detective Hartfield had to contact the John Deere dealership where he obtained the contact information for the owner. This investigation took an additional 45 minutes.

At the conclusion of the hearing, the trial court granted appellee's motion to suppress. The trial court made several findings of fact and conclusions of law relevant to our discussion.

## FINDINGS OF FACT

1. Jacob Medve is a witness called by the State. On or about February 13, 2018 he was employed as a deputy by the Fort Bend County Sheriff's Office and was dispatched to the intersection of F.M. 442 and F.M. 1236 in Needville, Fort Bend County, Texas in reference to an abandoned red truck parked at this intersection.

2. Although there was no farm equipment attached to or located near this red truck, Deputy Medve, after being advised that there had been a John Deere tractor stolen the day before, asked the Fort Bend County Sheriff's Office to contact the Needville Police Department to check the area for vehicles that might be attempting to steal farm equipment.

3. Chief M. Dickerson of the Needville Police Department is a witness called by the State. He arrived on scene and advised that a blue truck pulling a trailer with a tractor on it was traveling south on F.M. 1236. Deputy Medve and Chief Dickerson decided to locate this truck.

4. Once the blue truck was located it was no longer on the public roadway but was located on private property. None of the officers who testified at the hearing actually saw the defendant driving the blue truck and therefore did not observe any traffic violation. The officers believed that the blue truck was stuck in the mud on the private property.

4

5.     Deputy Medve and Chief Dickerson both testified that this area is a rural farming area where it is not uncommon to see a truck pulling a trailer with a tractor on it.

6.     Deputy Medve and Chief Dickerson approached the driver of the blue truck on the private property and asked him to exit his vehicle. Deputy Medve testified that he observed the defendant stabbing his cell phone with a knife. The defendant was then ordered to exit the truck at gunpoint. Neither the cell phone nor the knife was collected as evidence. The driver of the blue truck was identified as defendant Jessie White.

7.     The defendant was detained in handcuffs in the back of a patrol vehicle while Detective Robert Hartfield of the Fort Bend County Sheriff's Office was called to the scene to investigate.

8.     Detective Hartfield is a witness for the State. When detective Hartfield arrived on scene and learned that the person detained was Jessie White, someone he was familiar with, and that a red truck had been seen nearby abandoned, Detective Hartfield concluded that the red truck must belong to the defendant's brother Nelsin [sic] White, whom he was also familiar with.

9.     Detective Hartfield testified that he never went to the scene of the red truck, did not personally observe it or have the registration verified, and never saw Nelsin White that day and did not thereafter interview or charge Nelsin White in connection with this case.

10.     Detective Hartfield testified that due to the fact that a red truck was seen nearby and the defendant's brother was known to drive a red truck, coupled with the fact that the defendant had been seen stabbing his cell phone with a knife, required that the defendant be further detained while an investigation commenced into the ownership of the tractor and trailer connected to the defendant's truck. The detention and investigation lasted approximately one and a half hours.

11.     Neither the tractor nor the trailer had been reported stolen. The fact that they were stolen was not known to the officers on scene or the complainants themselves until Detective Hartfield did his investigation on scene which consisted of checking the registration of the tractor and trailer and contacting their respective owners to see if their property was stolen. The owner of the private property where the blue truck, tractor and trailer were located had not reported anyone trespassing on his property.

5

12.    The defendant was in lawful possession of the blue pickup truck which was registered to either him or a family member. The defendant's uncle was called to the scene to take possession of the blue pickup truck.

13.    There was no arrest warrant or search warrant for the defendant or any property in his possession. No officer on scene personally saw the defendant commit any offense, including the alleged theft of the tractor and the trailer.

## CONCLUSIONS OF LAW

1.    The Court finds that no officer had a reasonable suspicion based on articulable facts that criminal activity was afoot, nor did they have a reasonable suspicion that a certain person, namely the defendant Jessie White, was connected with the activity.

2.    Any suspicion of the officers was unreasonable given the above-detailed findings of fact. The officers lacked evidence that would constitute probable cause.

3.    The Court finds that the investigative stop was improper, violated the Fourth Amendment of the United States Constitution and Art. 1, § 9 of the Texas Constitution, and requires a suppression of the evidence, that being the tractor and the trailer.

The trial court later signed the following supplemental findings of fact and conclusions of law:

1.    On February 13, 2018, Deputy Medve of the Fort Bend County Sheriff'S Office (FBCSO) responded to a suspicious vehicle call at the corner of FM 442 and FM 1236. Upon making location, Deputy Medve determined the vehicle was abandoned and put out a call to Detective Hartfield of the FBCSO Auto Theft Division.

2.    Through prior dealings, Detective Hartfield was able to inform Deputy Medve the vehicle matched the description of Nelson White's vehicle. Detective Hartfield informed Deputy Medve he would be in route because Nelson White was a suspect in area tractor thefts. Deputy Medve was also aware of a John Deere tractor theft in that area from the day prior.

3.    Deputy Medve then made a call to Chief Dickerson of the Needville Police Department to assist checking the area for suspicious

activity based upon the foregoing. When Chief Dickerson arrived, he advised Deputy Medve a dark in color truck was pulling a John Deere tractor and should be making their location soon.

4.    The truck did not make the location, so Chief Dickerson and Deputy Medve backtracked along the route Chief Dickerson had come. At that point, both officers observed a dark in color truck, pulling a trailered tractor, to be stuck in a hay meadow.

5.    Officers made contact with the driver of the truck at which time Deputy Medve observed the driver to be destroying a cell phone with a knife. Both officers drew their service weapons and made commands for the driver to exit the vehicle.

6.    The driver was identified as Jessie White and detained for further investigation and officer safety. Defendant is not the owner of the property on which he was located when contact was made.

7.    Detective Hartfield was made aware an individual had been detained and investigation of ownership was needed.

8.    Detective Hartfield testified he began investigating ownership on the tractor and trailer immediately upon arriving on scene.

9.    Detective Hartfield testified the trailer registration did not return to Defendant. Detective Hartfield contacted the registered owner of the trailer, who informed Detective Hartfield no one had permission to use the trailer and it should be in storage in Booth, Texas.

10.    Detective Hartfield testified at this point the Defendant's status changed from detained to in custody due to the confirmation of crime. He further testified it took approximately 30 to 40 minutes from the time of detention to the time he confirmed the trailer was stolen.

11.    Detective Hartfield then continued his investigation to determine ownership of the tractor. He was able to determine the tractor did not belong to the defendant and made contact with the registered owner.

12.    After completion of the investigation, the defendant was charged with theft of the tractor and theft of the trailer.

Based on the foregoing Findings of Fact, the Court makes the following Conclusions of Law:

1.    During the hearing on the Defendant's Motion to Suppress,

7

Sergeant Medve, Detective Hartfield and Chief of Police Dickerson, provided testimony that was credible in all respects.

## ANALYSIS

In a single issue the State challenges the trial court's ruling granting appellee's motion to suppress because appellee had no expectation of privacy in the stolen tractor and trailer, and thus lacked standing to challenge the seizure of the tractor and trailer.

## I. Standard of Review

In reviewing a trial court's ruling on a motion to suppress, an appellate court applies an abuse-of-discretion standard and will overturn the trial court's ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). When reviewing a trial court's ruling on a motion to suppress, we give almost total deference to the court's determination of the historical facts that the record supports, especially when those fact findings are based on an evaluation of the witnesses' credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We accord the same level of deference to the trial court's rulings on mixed questions of law and fact if those decisions turn on the credibility and demeanor of the witnesses. *Guzman*, 955 S.W.2d at 89. We review de novo mixed questions of law and fact that do not turn on witness credibility. *Id*. Despite its fact-sensitive analysis, the "reasonableness" of a specific search or seizure under the Fourth Amendment is subject to de novo review. *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004).

When the trial judge makes express findings of fact, as here, we first determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We uphold the trial court's ruling if it is supported by the record

and correct under any theory of law applicable to the case. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008). Thus, if supported by the record, a trial court's ruling on a motion to suppress will not be overturned. *Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.–Houston [14th Dist.] 2007, no pet.).

## II.    Appellee had standing to challenge the invasion of his personal privacy interest.

In a single issue on appeal the State argues that appellant lacked standing to challenge the lawfulness of the seizure of the stolen tractor and trailer. Because standing is an element of a claim of unlawful search and seizure, an appellate court may raise the issue of standing on its own and may analyze that issue as part of the claim presented. *See Kothe*, 152 S.W.3d at 60; *State v. Millard Mall Servs., Inc.*, 352 S.W.3d 251, 253 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Accordingly, the State may raise the issue of standing for the first time on appeal. *See State v. Klima*, 934 S.W.2d 109, 111 (Tex. Crim. App. 1996).

"Under the Fourth Amendment, '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]'" *State v. Huse*, 491 S.W.3d 833, 839 (Tex. Crim. App. 2016) (quoting U.S. Const. amend. IV). "When 'the Government obtains information by physically intruding' on persons, houses, papers, or effects, 'a search' within the original meaning of the Fourth Amendment has 'undoubtedly occurred'" *Florida v. Jardines*, 569 U.S. 1, 5 (2013) (quoting *United States v. Jones*, 565 U.S. 400, 406 n.3 (2012)). To assert a challenge to a search and seizure, a defendant must first establish standing. *See Kothe*, 152 S.W.3d at 59; *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

Standing in this context is an individual's right to complain about an allegedly illegal government intrusion under the Fourth Amendment. *Pham v. State*, 324

S.W.3d 869, 874 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *see Villarreal*, 935 S.W.2d at 138. Fourth Amendment rights are personal rights, which may not be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978); *Huse*, 491 S.W.3d at 839. Proof of "a reasonable expectation of privacy" is at the forefront of all Fourth Amendment claims. Any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded. *Rakas*, 439 U.S. at 139.

Standing is a question of law, which we review de novo. *Kothe*, 152 S.W.3d at 59. Only after a defendant has established his standing to complain may a court consider whether he has suffered a substantive Fourth Amendment violation. *See Villarreal*, 935 S.W.2d at 138.

In addressing standing, "it is critical that the precise police conduct being objected to be properly identified, for this may itself turn out to be determinative on the standing issue." *Kothe*, 152 S.W.3d at 60 (quoting 5 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 11.3, at 120 (3d ed.1996)). In this case, the State asserts that appellee had no reasonable expectation of privacy in the tractor and trailer that he did not own. True enough, appellee cannot complain about a seizure of property he did not own. *See Busby v. State*, 990 S.W.2d 263, 270 (Tex. Crim. App. 1999) (defendant had no standing to complain of the search of a stolen vehicle). But that was not the basis of appellee's complaint.

Rather, appellee's Fourth Amendment claim was based on the purportedly illegal detention of himself as the driver of the truck. He asserts that the officers had no reasonable suspicion to detain him because the law enforcement officers "were not aware before approaching the defendant that any alleged criminal activity had occurred."

"If either the stopping of the car or the passenger's removal from it are unreasonable in a Fourth Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit." *Kothe*, 152 S.W.3d at 61 (quoting 5 LAFAVE, § 11.3(e), at 173–74.). Appellee had a reasonable expectation of privacy in not being detained beyond the time necessary for law enforcement to complete their investigation. *See id.* at 62. The State has not asserted that appellant lacked standing to challenge the invasion of his personal privacy. We therefore overrule the State's sole issue on appeal.

## CONCLUSION

Having overruled the State's sole issue on appeal, we affirm the trial court's order granting appellee's motions to suppress.

/s/     Jerry Zimmerer
        Justice

Panel consists of Justices Jewell, Bourliot, and Zimmerer.

Do Not Publish — Tex. R. App. P. 47.2(b).

11